847 F.2d 1499
 57 USLW 2067
 Luis C. TRIGO, Jr., Elvira Trigo and Carmen Trigo, as all
surviving Heirs to the Estate of Luis C. Trigo,
deceased, Plaintiffs-Appellants,
v.
FEDERAL DEPOSIT INSURANCE CORPORATION (FDIC), a corporation
organized and existing under the law of the United
States of America, Defendant-Appellee.
 No. 87-5064.
 United States Court of Appeals,
Eleventh Circuit.
 June 23, 1988.
 
 1
 Lee Mandell, Hall & Swann, Carlos A. Romero, Jr., Coral Gables, Fla., for plaintiffs-appellants.
 
 
 2
 David G. Mulock, Carlton, Fields, Ward, Emmanuel, Smith, Cutler & Kent, P.A., Tampa, Fla., for defendant-appellee.
 
 
 3
 Appeal from the United States District Court for the Southern District of Florida.
 
 
 4
 Before JOHNSON and EDMONDSON, Circuit Judges, and HOFFMAN*, Senior District Judge.
 
 WALTER E. HOFFMAN, Senior District Judge:
 
 5
 Luis, Elvira and Carmen Trigo appeal the district court's order allowing the FDIC in its corporate capacity to escape liability on a bilateral contract. The FDIC acquired rights under the contract while disclaiming liabilities pursuant to a purchase and assumption agreement entered into with the FDIC in its capacity as receiver of the assets of a failed bank. We must determine whether the rights and obligations of the FDIC in its corporate capacity are governed by Florida law (prohibiting the purchase of assets under a contract while excluding liabilities) or whether federal law affords special protection for the FDIC.
 
 
 6
 After careful review of both the record below and the applicable case law and statutes, we find that the rights and obligations of the FDIC acting in its corporate capacity are governed by federal law. In the instant case, federal law protects the FDIC in its corporate capacity from liability under contracts purchased from the FDIC as receiver of a failed bank's assets. Accordingly, we affirm the district court's partial summary judgment order.
 
 FACTS
 
 7
 In February of 1975, Luis and Elvira Trigo (appellants)[1] entered into a contract for deed with Covington Properties (Covington) to acquire real property (lot 315) in Lake Padgett Estates in Pasco County, Florida. The appellants were to receive clear title to the lot after completing payment of all of the installments under the contract. Covington gave a mortgage on lot 315 to Metropolitan Bank and Trust Company (Metropolitan). Covington also assigned the contract for deed to Metropolitan without recourse. Neither the mortgage nor the contract for deed was recorded.
 
 
 8
 After assigning the contract for deed to Metropolitan, Covington went into bankruptcy. The trustee in bankruptcy sold Covington's assets, including the deed to lot 315, to Suncoast Highlands Corporation. Suncoast Highlands then gave a mortgage on the lot to Sun Bank/Suncoast.
 
 
 9
 After Covington became insolvent, Florida's comptroller of the currency determined that Metropolitan was insolvent as well. The comptroller closed Metropolitan on February 12, 1982, and appointed as receiver the Federal Deposit Insurance Corporation (FDIC). As receiver of the failed bank, the FDIC entered into a three-party transaction to liquidate Metropolitan's assets. First, the FDIC sold all of Metropolitan's "acceptable" assets, along with accompanying liabilities, to the Great American Bank of Tampa.[2] The transaction with the Great American Bank of Tampa left with the FDIC Metropolitan's remaining "undesirable" assets. Pursuant to 12 U.S.C. sections 1821(e) and 1823(e), the FDIC then split itself into two entities: the FDIC as receiver and the FDIC in its corporate capacity (FDIC-Corp.). The FDIC as receiver entered into a purchase and assumption agreement by which the FDIC-Corp. bought all of Metropolitan's assets not purchased by the Great American Bank of Tampa. The purchase and assumption agreement states in section 1.3:
 
 
 10
 Discharge of Obligations. The Corporation, by its execution of this Agreement, agrees to assume or discharge only those obligations specifically set forth herein and does not assume or agree to discharge any liability of the Bank which was not assumed by the Assuming Bank under the terms of the Purchase and Assumption Agreement.
 
 
 11
 Among the assets bought by the FDIC-Corp. was the contract for deed originally negotiated between Covington and the appellants. On June 23, 1982, the FDIC-Corp. notified the appellants that it was the new owner of the contract for deed and that the appellants were to pay all remaining installments under the contract to the FDIC. From June of 1982 until December of 1984, the appellants made payments under the contract for deed to the FDIC-Corp.
 
 
 12
 On July 1, 1983, Sun Bank, who owned a mortgage on the deed to lot 315, began foreclosure proceedings on the property. During the summer of 1983, Sun Bank served the FDIC-Corp. with a foreclosure complaint. The circuit court for Pasco County entered final judgment in favor of Sun Bank on November 15, 1984 and scheduled the foreclosure sale for December 18. On December 5, the FDIC-Corp. wrote the appellants, notifying them of the pending foreclosure and advising the appellants to contact Sun Bank in order to protect their interest. The lot was sold at the foreclosure sale and the appellants lost their interest in the property. From the time the appellants entered into the contract for deed until the lot was finally sold pursuant to court order, the appellants made installment payments totalling $15,851.09. Of that total, the appellants paid $3,432.60 directly to the FDIC-Corp.
 
 
 13
 The appellants filed in the United States District Court for the Southern District of Florida a complaint against the FDIC-Corp. seeking to rescind the contract for deed and collect as damages the entire amount paid under the contract. In the alternative, the appellants maintained that the FDIC-Corp. was estopped from denying liability under the contract, since the FDIC asserted ownership over the contract thereby enjoying its benefits. Under their estoppel theory, as under the rescission theory, the appellants claimed as damages all payments made under the contract for deed as well as incidental expenses arising as a result of the contract. The FDIC-Corp. moved for partial summary judgment on the claim admitting liability only for the $3,432.60 paid directly to the FDIC. The district court granted the motion and, citing language in the purchase and assumption agreement, determined that the FDIC-Corp. never assumed liability on the contract for deed. Consequently, the court entered final judgment on behalf of the FDIC-Corp. The appellants timely moved to alter and amend the judgment and finding of facts under Rules 52 and 59 of the Federal Rules of Civil Procedure. The court dismissed the motion without comment. The appellants have asked this court to review the district court's holding that the FDIC-Corp. is not liable on a contract for deed acquired from the FDIC as receiver of a failed bank's assets. For the reasons set forth herein, we affirm the district court's ruling.
 
 I. Rescission
 
 14
 The appellants seek to rescind the contract for deed and collect damages from the FDIC-Corp. The record, however, makes clear that no contract exists between the appellants and the FDIC-Corp. The appellants entered their contract for deed with Covington Properties. Covington assigned the contract to Metropolitan Bank and Trust. When Metropolitan became insolvent, the FDIC as liquidator "stepped into Metropolitan's shoes," thus becoming the assignee of the contract. FDIC v. Glickman, 450 F.2d 416, 418 (9th Cir.1971). In each of these transactions, both the rights and obligations of the contract for deed changed hands. Consequently, the appellants could bring an action for breach of contract against Covington, Metropolitan or the FDIC in its capacity as receiver of Metropolitan's assets. The FDIC-Corp., however, did not purchase the contract for deed from the FDIC as liquidator. The language of the purchase and assumption agreement makes clear that the FDIC-Corp. did not assume any obligations of Metropolitan not assumed by the Great American Bank of Tampa. Therefore, while the FDIC-Corp. purchased all of Metropolitan's assets, the FDIC as liquidator remained liable on all of Metropolitan's obligations.[3]
 
 
 15
 In the instant case, it seems the appellants have sued the wrong party. The appellants could have brought an action to rescind the contract for deed against either Covington, Metropolitan or the FDIC as receiver of Metropolitan's assets since each of these parties is liable on the contract. The appellants, however, cannot sue the FDIC-Corp. to rescind the contract since no contract exists between the parties.
 
 
 16
 The appellants contend that the purchase and assumption agreement by which the FDIC-Corp. acquired Metropolitan's assets violates Florida law. Citing Jenkins v. City Ice & Fuel Co., 118 Fla. 795, 160 So. 215 (1935), the appellants argue that a party cannot purchase the assets of a bilateral contract without incurring the liabilities of the contract as well. While the appellants properly interpret the Jenkins holding, Florida law does not govern the liability of the FDIC-Corp. Case law makes clear that federal common law governs the rights and obligations of the FDIC when acting in its corporate capacity.[4] FDIC v. Wood, 758 F.2d 156, 159 (6th Cir.), cert. denied, 474 U.S. 944, 106 S.Ct. 308, 88 L.Ed.2d 286 (1985); Gunter v. Hutcheson, 674 F.2d 862, 869-70 (11th Cir.), cert. denied, 459 U.S. 826, 103 S.Ct. 60, 74 L.Ed.2d 63 (1982); FDIC v. Tito Castro Constr., 548 F.Supp. 1224, 1226 (D.P.R.1982),aff'd, 741 F.2d 475 (1st Cir.1984). See United States v. Kimbell Foods, Inc., 440 U.S. 715, 726-27, 99 S.Ct. 1448, 1457, 59 L.Ed.2d 711 (1979) (outlining process by which courts determine when federal common law governs). Case law also makes clear that federal common law protects the FDIC-Corp. from the breach of contract action at issue. See In re F & T Contractors, Inc., 718 F.2d 171, 180 (6th Cir.1983) (FDIC-Corp. can limit liability through purchase and assumption agreement); FDIC v. Citizens Bank & Trust Company of Park Ridge, Illinois, 592 F.2d 364 (7th Cir.) (same), cert. denied, 444 U.S. 829, 100 S.Ct. 56, 62 L.Ed.2d 37 (1979); FDIC v. Tito Castro Const., 548 F.Supp. at 1266 (FDIC-Corp. does not step into shoes of failed bank whose assets it purchased); FDIC v. James T. Barry Co., 453 F.Supp. 81, 82 (E.D.Wis.1978) (federal banking law insulates FDIC-Corp. from claims arising out of failed bank's wrongdoing).
 
 
 17
 The appellants contend that, even if federal law determines the liability of the FDIC-Corp., such law does not protect the agency in the instant case. Citing Howell v. Continental Credit Corp., 655 F.2d 743 (7th Cir.1981) and FDIC v. Panelfab Puerto Rico, Inc., 739 F.2d 26 (1st Cir.1984), the appellants argue that the FDIC is bound by the provisions of any contract acquired from the FDIC as liquidator via a purchase and assumption agreement. Both cases cited by the appellants, however, allow party defendants to assert defenses against the FDIC-Corp. based on bilateral contracts. If the FDIC-Corp. were trying to collect payments from the appellants pursuant to the contract for deed, Howell and FDIC v. Panelfab would control. In the instant case, however, the appellants are the plaintiffs bringing a claim against the FDIC-Corp. based on a bilateral contract. Consequently, the cases the appellants cite are inapposite.[5]
 
 
 18
 For the reasons stated above, we find that the appellants cannot maintain their rescission action against the FDIC in its corporate capacity.
 
 II. Estoppel
 
 19
 In the alternative to contractual liability, the appellants argue that the FDIC-Corp. should be estopped from denying liability on the contract for deed because the FDIC-Corp. received payments under the contract and otherwise exercised control over the contract. The record below, however, makes clear that the FDIC-Corp. should not be estopped from denying liability. Upon discovering that it could not deliver title to lot 315, the FDIC-Corp. notified the appellants to discontinue payments. Furthermore, the FDIC-Corp. has admitted liability for payments made directly to the agency. The appellants made all other payments under the contract to Metropolitan before the FDIC-Corp. exercised control over or received benefits under the contract for deed. Therefore, we find that the appellants' estoppel theory of recovery is inapplicable as to payments made to Metropolitan and unnecessary as to payments made to the FDIC-Corp.
 
 III. Motion to Amend the Judgment
 
 20
 The appellants contend, and rightly so, that the district court order "contained sketchy findings of fact and conclusions of law." The appellants therefore moved to alter and amend the judgment and findings of fact under Rules 52 and 59 of the Federal Rules of Civil Procedure. The district court dismissed the motion and the appellants challenge the district court's ruling.
 
 
 21
 The standard for remanding a case on this motion is "abuse of discretion."
 
 
 22
 The district court order, while certainly sketchy, cites two authorities to support the ruling: the language of the purchase and assumption agreement and FDIC v. Citizens Bank and Trust Company of Park Ridge, Illinois, 592 F.2d 364 (7th Cir.1979). As this opinion demonstrates, these authorities provide an adequate basis for the summary judgment ruling. Therefore, we find that the district court did not abuse its discretion by denying the appellants' motion under Rules 52 and 59.
 
 
 23
 The appellants present a compelling story of a widow wrongfully deprived of her property. The FDIC-Corp., however, is not the party who deprived the appellants. The fate of lot 315 was never within the control of the FDIC-Corp. Indeed, the appellants themselves could have best prevented the loss at issue. Had the appellants properly recorded the contract for deed and mortgage, Sun Bank would have discovered the encumbrance and probably never would have purchased the deed from the bankruptcy trustee. If Sun Bank had purchased the deed despite the recorded contract and mortgage, Sun Bank's interest would be inferior to the interest of Metropolitan and ultimately the interest of the FDIC-Corp. As it stands, of course, the contract and mortgage were never recorded. Therefore, we cannot hold the FDIC-Corp. liable for losses that were never within its control. The judgment of the district court is, accordingly, AFFIRMED.
 
 
 
 *
 Honorable Walter E. Hoffman, Senior U.S. District Judge for the Eastern District of Virginia, sitting by designation
 
 
 [1]
 Luis C. Trigo died on July 28, 1977. His interest in the contract for deed passed to Luis Trigo, Jr. (his son), Elvira Trigo (his widow) and Carmen B. Trigo
 
 
 [2]
 In the typical purchase and assumption transaction, a stable bank purchases the failed bank's acceptable assets. Assets are acceptable when the bank is willing to assume liabilities that accompany the assets. All other assets are unacceptable, usually due to the difficulty in collecting on the assets
 
 
 [3]
 In a typical purchase and assumption transaction, the FDIC acts in two distinct capacities. On one hand, the FDIC acts as receiver of a failed bank, marshalling its assets in order to pay the bank's creditors. On the other hand, the FDIC-Corp. acts as an insurer of member banks. In its corporate capacity, the FDIC must make the most of the assets purchased from the FDIC as receiver. See Gunter v. Hutcheson, 674 F.2d 862 (11th Cir.1982) (FDIC acts in dual capacity as receiver and purchaser of failed bank's assets); FDIC v. Ashley, 585 F.2d 157, 161 (6th Cir.1978) (same); Freeling v. Sebring, 296 F.2d 244, 245 (10th Cir.1961) (same). Considering its goal of maximizing the value of a failed bank's assets, we cannot conclude that the FDIC-Corp. must accept the liabilities that accompany assets which stable banks label as "unacceptable." Commercial banks refuse to buy these assets because the accompanying liabilities are usually greater than the value of the assets. To require the FDIC-Corp. to accept the liabilities accompanying unacceptable assets would seriously deplete and very probably eliminate the funds necessary to insure member banks
 
 
 [4]
 While federal law controls the rights and liabilities of the FDIC-Corp., state law controls the FDIC when the agency is acting as receiver of a failed bank. When acting in its corporate capacity, the FDIC is operating "under authority derived from a specific statutory scheme passed by Congress in exercise of a 'constitutional function or power' to protect and stabilize the national banking system." Gunter v. Hutcheson, 674 F.2d 862, 869 (11th Cir.1982), quoting D'Oench, Duhme & Co. v. FDIC, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942). Hence, federal law applies. See United States v. Kimbell Foods, Inc., 440 U.S. 715, 726, 99 S.Ct. 1448, 1457, 59 L.Ed.2d 711 (1979) (outlining test for determining when federal law governs federal agencies). As receiver of a failed bank, however, the FDIC is not pursuing a strong federal policy. The FDIC as receiver merely takes the place of any receiver that might be appointed under state law. Consequently, when acting as receiver, the FDIC is governed by state law. FDIC v. Sumner Financial Corp., 602 F.2d 670, 679 (5th Cir.1979). Case law makes clear that claims against an insolvent bank must be submitted to the FDIC in its capacity as receiver of the failed bank's assets. FDIC v. James T. Barry Co., Inc., 453 F.Supp. 81, 82 (E.D.Wis.1978). Even the government attorney, representing the FDIC-Corp., stated in his brief that the appellants may have a valid claim against the FDIC in its receivership capacity
 
 
 [5]
 In support of the action to rescind the contract, the appellants also cite FDIC v. Hughes Development Company, Inc., 684 F.Supp. 616 (D.Minn., 1988). The appellants maintain that the court in FDIC v. Hughes Development indicated that 12 U.S.C. Sec. 1823(e) "provides FDIC with no shield or protection against a claim for rescission, even though the breach giving rise to the remedy of rescission is attributable wholly to conduct of the insolvent bank occurring prior to FDIC intervention." In FDIC v. Hughes Development, however, as in Howell and FDIC v. Panelfab, the appellants raised a defense to a suit brought by the FDIC. The instant case involves a suit against the FDIC. Thus, FDIC v. Hughes Development is inapplicable