**FEDERAL DEPOSIT INSURANCE COR-PORATION in its Corporate Capacity as Liquidator of Lake Austin National Bank, Plaintiff–Appellant,**

v.

**LAKE COUNTRY NATIONAL BANK, Defendant–Appellee.**

No. 88–1505.

United States Court of Appeals, Fifth Circuit.

May 19, 1989.

Rehearing Denied June 14, 1989.

Scott N. Morse, Austin, Tex., for plaintiff-appellant.

Ross Sterling Crossland, Austin, Tex., for defendant-appellee.

Before POLITZ and JOLLY, Circuit Judges, and HUNTER,* District Judge.

POLITZ, Circuit Judge:

The Federal Deposit Insurance Corporation ("FDIC"), in its capacity as liquidator of Lake Austin National Bank ("LANB"), appeals the dismissal of its claims against Lake Country National Bank ("Lake Country") for failure to comply with the notice requirements of 12 C.F.R. § 210.12(c). For the reasons assigned, we reverse, render, and remand for further proceedings.

### Background

On June 24, 1986, LANB received for deposit a $17,565 check from one of its customers, Bruce H. Evans. The check was drawn by Lakes Area Motor Company on its account at Lake Country National Bank. LANB placed the check on a five-day hold to prevent payment or crediting before June 30, 1986, and routed it for collection through the San Antonio Branch of the Federal Reserve Bank of Dallas.

Lake Country received the check for collection on June 25, 1986. Under Regulation J, 12 C.F.R. § 210.12, Lake Country's deadline for notifying LANB that it was returning the check unpaid was midnight, June 30, 1986. On June 25 at 9:32 a.m. and June 26 at 9:45 a.m., an LANB employee called Lake Country to inquire about the check. During each of these telephone conversations LANB was told that there were not then sufficient funds in the account of Lakes Area Motor Company for

payment of the check. On the afternoon of June 26 Lake Country refused to pay the check and returned it to LANB through the San Antonio Branch of the Federal Reserve Bank of Dallas. LANB received the dishonored check on July 2, 1986.

In the interim, on June 30 Evans withdrew $300 from his account at LANB. On July 1, after the five-day hold had expired and prior to LANB's receipt of the returned check, LANB credited Evans' account and allowed him to withdraw $16,240. Evans withdrew another $100 from his account on July 2.

On May 21, 1987 LANB was closed due to insolvency and the FDIC was appointed receiver. Thereafter, in its corporate capacity the FDIC filed suit claiming damages because Lake Country had failed to notify LANB, as required by 12 C.F.R. § 210.12(c), that it was returning the subject check unpaid. After trial, the district court found that the telephone calls between LANB and Lake Country constituted sufficient notice that the check would not be paid, and it rejected the FDIC's claims. The FDIC timely appealed, contending that the district court erred in its factual findings and legal conclusion that Lake Country notified LANB that the $17,565 check would be returned unpaid.

### Analysis

■ We review findings of fact under the clearly erroneous standard, Fed.R. Civ.P. 52, and give plenary review to conclusions of law. *Joe T. Dehmer Distributors, Inc. v. Temple*, 826 F.2d 1463 (5th Cir.1987). After reviewing the facts and applicable law, we cannot agree with the district court that Lake Country gave LANB sufficient notification that the Lake Area Motor Company check to Bruce H. Evans would be returned unpaid.

Under applicable regulations, in this transaction Lake Country was the paying bank and LANB was the depositary bank. 12 C.F.R. § 210.12. Section 210.12(c) provides in pertinent part:

* District Judge of the Western District of Louisiana, sitting by designation.

A paying bank that receives a cash item in the amount of $2500 or more directly or indirectly from a Reserve Bank and determines not to pay it shall provide notice to the first bank to which the item was transferred for collection ("depositary bank") that the paying bank is returning the item unpaid.

Notice must be received by the depositary bank by midnight of the second business day following the deadline for return of the item. The deadline for return of the item is midnight of the next banking day following the banking day of receipt. 12 C.F.R. § 210.12(a)(1). In the case at bar, as noted above, notice of rejection had to be given to LANB before midnight June 30, 1986. The required notice may be given by various means, including the return of the cash item to the depositary bank, telephone or telegraph communication to the depositary bank, or by request that the Federal Reserve Bank provide notice.

Regardless of the means used to effect notification, we perceive that Regulation J contemplates an unqualified notice from the paying bank that it will not pay the item. The primary purpose of requiring timely notification of nonpayment is to alert the depositary bank so that it may protect itself from potential loss. To this end, the notification must identify the instrument and state in sufficiently specific terms that it will not be honored.

In the case at bar, Lake Country did not telephone or telegraph LANB, it did not request that the Federal Reserve Bank provide notice, nor did LANB receive the returned check before midnight June 30. The only communications between the two banks were the two telephone calls placed by LANB employees inquiring as to whether the check would be paid.

The testimony of the Lake Country bookkeeper, Peggy Birkelback, reflects that as of the second telephone call on June 26 Lake Country had not yet decided whether to honor or dishonor the check. She testified as follows about that June 26 telephone conversation:

Q: Who was that call from, if you know?

A: It was from Lake Austin Bank.

Q: What did you tell them? What did they ask you during that inquiry?

A: They wanted to know was the check going to clear.

Q: And what did you tell them?

A: That it wasn't as of that morning.

Q: Okay. What did you mean by that? Or what did you tell them in that regard?

A: Okay. I told them that our cutoff time for our checks was 3:00 o'clock in the afternoon and they could call back and make sure that it—if it was going to clear or not.

*   *   *   *   *   *

Q: When you spoke to the Lake Austin person that morning, did you—do you recall if you said, please call back, or you can call back in the afternoon, or—or did you insist that they call back in the afternoon?

A: No, I told them that they could call back.

Q: That they could call back in the afternoon?

A: That's right.

It is clear that LANB was informed only that there were insufficient funds "as of that morning" to pay the check and it was invited to call again later in the day for an update.

We do not view that scenario as within the intendment of the notice requirement of Regulation J. After deciding to return the check unpaid, Lake Country made no effort whatever to notify LANB of its decision, other than to put in motion the return of the check. Unfortunately, the returned check was not received by LANB until after the notification cutoff, and after the LANB five-day hold on the check had expired and the check was credited to Evans' account.

■ We hold that the equivocal responses by the Lake Country employee to the telephone inquiries by the LANB employee were insufficient to comply with the notice requirement of 12 C.F.R. § 210.12(c). To qualify, the notice of dishonoring must be specific, precise, unequivocal, and certain,

and it must be delivered to a responsible person at the depositary bank.

■ We further conclude that the district court's finding that Lake Country exercised ordinary care in notifying LANB of the nonpayment was clearly erroneous. As noted, the evidence establishes that Lake Country initiated no action to give LANB notice that the check would be returned unpaid. As a consequence LANB sustained a loss, one envisioned by 12 C.F.R. § 210.12(c)(6):

A paying bank that fails to exercise ordinary care in meeting the requirements of this paragraph shall be held liable to the depositary bank for losses incurred by the depositary bank, up to the amount of the item, reduced by the amount of the loss that the depositary bank would have incurred even if the paying bank had used ordinary care. A paying bank that fails to act in good faith in meeting the requirements of this paragraph may be liable for other damages, if any, suffered by the depositary bank as a proximate consequence. If the paying bank or the depositary bank prevails in litigation involving the requirements of this paragraph, it may recover its court costs and reasonable attorneys' fees. A paying bank shall not be liable for mistake, neglect, negligence, misconduct, insolvency or default of any other bank or other person in connection with providing notice under this paragraph.

LANB acted prudently in placing a hold on Evans' check to prevent withdrawal of the funds prior to the deadline for notification of nonpayment. Had Lake Country exercised ordinary care in giving notice of nonpayment, LANB could have declined the $16,340 of withdrawals from Evans' account on July 1 and July 2. Under section 210.12(c)(6), Lake Country is liable to the FDIC for that amount.

The decision of the district court is REVERSED, judgment is RENDERED in favor of the FDIC, and this case is REMANDED for entry of judgment in the principle amount of $16,340, plus applicable interest, and for determination and assessment of reasonable attorneys' fees and court costs.