Guy B. HOWERTON and Linda M. Howerton, Plaintiffs–Appellees,

v.

DESIGNER HOMES BY GEORGES, INC., Defendant,

The Resolution Trust Corporation, Etc., Defendant–Appellant.

No. 91–2174
Summary Calendar.

United States Court of Appeals, Fifth Circuit.

Jan. 10, 1992.

Rehearing Denied Feb. 19, 1992.

Scott Douglass Cunningham, Brill, Sinex & Stephenson, Dallas, Tex., for defendant-appellant.

Anthony D. Sheppard, Houston, Tex., for plaintiffs-appellees.

Before POLITZ, KING, and EMILIO M. GARZA, Circuit Judges.

POLITZ, Circuit Judge:

The Resolution Trust Corporation appeals a judgment reducing a lien to zero and ordering it to satisfy outstanding materialmen and mechanics liens on land owned by Guy B. and Linda M. Howerton. For the reasons assigned, we affirm.

### Background

The Howertons owned a subdivision lot free of encumbrances in 1987 when they contracted with Designer Homes by Georges, Inc. for the construction of a home. They then executed a Mechanic's Lien Contract and a Mechanic's Lien Note in the amount of $173,000 payable to Designer Homes, secured by the subdivision lot. Designer Homes transferred the note and lien to CSA Service Corporation, which transferred and assigned the note and lien to Cornerstone Savings Association, which was ultimately taken over by the Federal Savings and Loan Insurance Corporation and then the RTC. The Howertons and the RTC are the parties in the present dispute.

The Mechanic's Lien Note declares that: "This note incorporates and is subject to the mechanic's lien contract." The Mechanic's Lien Contract provides that "[t]his contract shall bind, inure to the benefit of, and be exercised by successors in interest of all parties[,]" and that any holder of the contract "is subject to all claims and defenses which the debtor could assert against the seller [contractor-builder]...." It also provides that the contractor will construct the Howerton residence "in a good and workmanlike manner, according to the plans and specifications agreed upon." If construction is not completed, then the consideration subject to the lien is to be diminished according to the amount necessary to complete construction as agreed. The contractor was further obliged to "pay all costs of construction, including labor, materials, and subcontractors," and to remove any liens from the property.

It is undisputed that the proposed home was never completed and that Designer Homes breached its contractual duties. The district court accepted the evidence that the unfinished structure is fatally flawed from the foundation up and does not conform to controlling plans and specifications. The proper materials were not used; inferior materials were substituted. The experts tendered by the Howertons testified that the construction is so poor that the foundation, roof, and frame could all collapse under the strain of additional weight if completion is attempted. The cost of repairing the many defects is estimated at between $150,000 and $200,000. During the course of construction the president of Designer Homes demanded, and the Howertons paid, over $20,000. In return, the contractor left $10,032.19 in outstanding subcontractor liens and a structure found by the district court to be totally worthless. The estimated cost of removal is $8,000.

After the Howertons complained of the visible defects in the structure Cornerstone accelerated the note and threatened to fore-

close. In response the Howertons filed suit in state court, seeking tort and breach of contract damages and an injunction prohibiting foreclosure. The suit was removed to federal court after the FSLIC placed the defendant bank in receivership and intervened in the state proceeding. After the RTC replaced the FSLIC the Howertons amended their pleadings and named the RTC "in every capacity" as a defendant. The district court entered judgment against the RTC in every capacity. The judgment reduces the lien on the property to zero and orders the RTC to remove the $10,032.19 in mechanic and materialmen liens filed against the land. The RTC timely appeals.

### Analysis

■ We review findings of fact under the clearly erroneous standard, Fed. R.Civ.P. 52, and give plenary review to conclusions of law. *FDIC v. Lake Country National Bank*, 873 F.2d 79 (5th Cir. 1989).

■ The RTC alleges that because it was never before the court in a corporate capacity the court erred in entering judgment against it "in every capacity." The RTC succeeded the FSLIC as conservator or receiver. 12 U.S.C. § 1441a(b)(6). The RTC, in its corporate capacity, is not liable for claims against the RTC in its capacity as conservator or receiver. *See Beighley v. FDIC*, 868 F.2d 776 (5th Cir.1989); *FDIC v. Roldan Fonseca*, 795 F.2d 1102 (1st Cir. 1986); and *Trigo v. FDIC*, 847 F.2d 1499 (11th Cir.1988) (discussing FDIC in its corporate, receiver, and conservator capacities). Accordingly, the RTC argues that the district court judgment should be modified to exclude the RTC in its corporate capacity. We hold that this argument has been waived.

■ When the FSLIC intervened in this suit it represented that it was the proper defendant for the claims, demands, and causes of action brought by the Howertons against the failed bank. After the RTC replaced the FSLIC, the Howertons amended their complaint to allege liability against

the RTC "in every capacity." The issue of capacity is subject to waiver if not specifically raised by negative averment. *Gogolin & Stelter v. Karn's Auto Imports, Inc.*, 886 F.2d 100, 102 n. 3 (5th Cir.1989), cert. denied, 494 U.S. 1031, 110 S.Ct. 1480, 108 L.Ed.2d 617 (1990); *MTO Maritime Transport Overseas, Inc. v. McLendon Forwarding Co.*, 837 F.2d 215 (5th Cir. 1988) (footnote omitted); *Bernstein Seawell & Kove v. Bosarge*, 813 F.2d 726 (5th Cir.1987) (citing Fed.R.Civ.P. 9(a)); *see* Fed. R.Civ.P. Rules 8(c), 9(a). The RTC did not raise this issue until after entry of judgment and the issue was thus waived.

■ The RTC next argues that it cannot be liable under the terms of the mechanic's lien contract because Cornerstone, which RTC ultimately succeeded, was only a holder of the lien subject to the contract and not a successor in interest to the contractor. As such, RTC posits, it does not have affirmative duties under the contract. RTC's argument is foreclosed by the plain language of the documents. The note "incorporates and is subject to" the contract which "bind[s], inure[s] to the benefit of, and [may] be exercised by successors in interest of all parties." The contract declares that any holder "is subject to all claims[.]" We agree with the district court that the contract applies and that it mandates removal of the materialmen and mechanics liens.

■ Given this factual basis, the authorities cited by the RTC do not support its position. Section 9.318 of the Texas Business and Commercial Code has no bearing on an assignee's defense to an action brought against it by the contract debtor; this statute defines only the contract debtor's ability to resist an assignee's claim. *Irrigation Association v. First National Bank*, 773 S.W.2d 346 (Tex.Ct.App. 1989) (citing Tex.Bus. & Com.Code § 9.318). Under federal law, the RTC might have resisted the present liability by repudiating the contract in a timely manner. 12 U.S.C. § 1821(e). After foregoing that option and pursuing this suit, however, the RTC cannot now renounce the terms of the contract.

■ Finally, the RTC disputes the district court's factual finding that the unfinished structure is worthless. That finding, based upon the testimony of experts and others, and photographs presented in this case, is not clearly erroneous. This contention has no merit.

The judgment of the district court is AFFIRMED.