**H.B. LIMEHOUSE, d/b/a Limehouse Properties, Plaintiff**

v.

**RESOLUTION TRUST CORPORATION, in its capacities as conservator and receiver for First South Savings Bank, F.S.B., and in its Corporate capacity, Defendants.**

Civ. A. No. 2:93–309–18.

United States District Court, D. South Carolina, Charleston Division.

July 13, 1994.

Ellis I. Kahn and Justin S. Kahn, Charleston, SC, for plaintiff.

Mark Stephens Sharpe, Harford W. Igleheart, Charleston, SC, John C. Benso, Pawleys Island, SC, and John R. Pelzer, Charleston, SC, for defendants.

## *ORDER*

NORTON, District Judge.

### *I. INTRODUCTION*

This claim arises out of the 1992 sale of the Meeting Street Inn by Resolution Trust Corporation in its capacity as Conservator for First South Savings Bank, F.S.B. (RTC–Conservator). Plaintiff, H.B. Limehouse, doing business as Limehouse Properties, claims he is entitled to a two percent brokerage commission on the sale. Defendant Resolution Trust Corporation, in its capacity as Receiver and Conservator for First South Savings Bank, F.S.B. and its corporate capacity, asserts that Plaintiff is not entitled to the commission and has moved for summary judgment on each of Plaintiff's three causes of action.

### *II. FACTUAL BACKGROUND*

The Meeting Street Inn was acquired by RTC–Conservator in April 1992 upon the failure of First South Savings Bank, Inc. It

was sold three months later to Plaintiff's wife, Frances F. Limehouse, at an auction conducted by NRC Auctions, Inc. (NRC) at the Omni Hotel in Charleston. Prior to the auction, a promotional brochure advertising the auction, and stating the terms on which a commission would be paid to brokers, was prepared and distributed by NRC. Plaintiff received a brochure and saw the following provision on fees to brokers. (H.B. Limehouse Dep. at 65, 66, 90.)

A 2% fee will be paid upon closing of the sale to any licensed South Carolina broker or agent whose prospect pays for and closes a property in the auction. Brokers must register their prospects in writing with the Auction Information Center, 1305 Sumter, Columbia, SC 29201. Registrations should be sent on company stationery, and must be postmarked on or prior to July 24, 1992. Letters must bear the signature of the prospect acknowledging their broker. Brokers must attend auction and sign in with their prospects. No commissions will be paid on any property to brokers participating in purchase of property, and an affidavit may be required stating that the broker is acting solely as a broker and not as a purchaser. A broker will not be recognized for prospects who have previously contacted the RTC, NRC Auctions, Inc. or its agents or representatives, and there can be no exceptions to this procedure. Absolutely no oral registrations will be accepted.

To comply with the registration requirement, Plaintiff sent a registration letter to NRC dated June 4, 1992 on Limehouse Properties letterhead stating,

I wish to register my client, Ms. Frances F. Limehouse, 64 Hassell (sic) Street,[1] Charleston, South Carolina, as a prospective buyer of the Meeting Street Inn, Charleston South Carolina, at the auction to be held here in Charleston on July 27, 1992.

The letter is signed by H.B. Limehouse, Broker, and by Frances F. Limehouse, Client. (Ex. 17 to Frances Limehouse Dep.)

Subsequently, Plaintiff faxed a second registration letter dated July 17, 1992 to NRC to register Frances F. Limehouse. (Ex. 1 to Am.Compl.) The second letter, again on Limehouse Properties letterhead, purports to be signed by Jefferson Bennett, an agent with Limehouse Properties, as registering Broker, but was, in fact, signed by a secretary in the Limehouse Properties office. (H.B. Limehouse Dep. at 25.) It states:

As per our conversation, I would like to register my client, Frances F. Limehouse of Charleston, S.C. as a bidder for the Meeting Street Inn. In the event she purchases the Inn at auction, our firm expects a commission of 2% of the sales price. Please execute a copy of this registration agreement and return for my files.

Ruth A. Hardison, a temporary, clerical employee of NRC, signed the letter and faxed it back to Limehouse Properties. (Hardison Dep. at 21, 42.)

Plaintiff attended the auction with Frances F. Limehouse and did the bidding. He was the successful bidder at three million dollars. Following the bidding, Plaintiff and Mrs. Limehouse exited to a contract room where Frances F. Limehouse entered into a Purchase and Sale Agreement with the seller of the Meeting Street Inn. Plaintiff signed an Exhibit D to the Purchase and Sale Agreement designated "Acknowledgement By Realtor." (Ex. 5 to Dep. of Frances Limehouse.) The Purchase and Sale Agreement identifies "Seller" as the Resolution Trust Corporation in its capacity as Conservator for First South Savings Bank, F.S.B., and "Buyer" as Frances F. Limehouse. Exhibit D to the Purchase and Sale Agreement "Acknowledgement By Realtor" states, among other things:

The undersigned represents that the undersigned is not participating in the purchase of the property in any way as a principal, or giving a rebate directly or indirectly of all or any portion of its commission to buyer and that the undersigned will provide an affidavit to that effect to the seller on the date of closing. The

---

1. 64 Hasell Street is listed in the white pages of the telephone book as the residence of H.B. Limehouse.

undersigned further represents that it owns no beneficial interest whatsoever in buyer, nor is it controlled by or under common control with buyer or in any way affiliated with buyer.

Shortly before the closing, Plaintiff was advised that a brokerage commission would not be paid.

The closing was held September 3, 1992. Financing was provided by First Union National Bank. Three Hundred Thousand Dollars ($300,000.00) was paid in cash by Plaintiff and Mrs. Limehouse. One Hundred Thousand Dollars ($100,000.00) was paid by cashier's check issued by First Union. Two Hundred Thousand Dollars ($200,000.00) was paid by check drawn on the account of The Indigo Inn. Plaintiff deposited $50,000.00 to that account shortly before closing. (See Letter of W. Andrew Gowder, Jr. with copies of checks attached.) Forty Thousand Dollars ($40,000.00) was paid out of the Indigo Inn account, a partnership in which Plaintiff and Mrs. Limehouse are equal partners. The First Union loan is secured by the Meeting Street Inn and also secured by a life insurance policy belonging to Plaintiff. It is personally and unconditionally guaranteed by Plaintiff. (H.B. Limehouse Dep. at 18–21.)

The Limited Warranty Deed identifies the "Grantor" as Resolution Trust Corporation as conservator for First South Savings Bank, F.S.B., and the "Grantee" as Frances F. Limehouse (Deed at 1.)

In response to Plaintiff's inquiry concerning commission, a November 16, 1992 letter from the RTC's closing attorney states: "Confirming our recent telephone conversation regarding the sale of the referenced asset, the Resolution Trust Corporation will not pay a commission to Limehouse Properties because payment is prohibited pursuant to the terms of the Purchase and Sale Agreement dated July 26, 1992 (specifically, Exhibit D—Acknowledgement by Realtor)."

### III. PROCEDURAL BACKGROUND

On January 13, 1993, Limehouse brought this action against NRC and the RTC in its various capacities, claiming a right to a two percent brokerage commission on the sale of the Inn. His first two causes of action allege that he is entitled to damages for breach of a contract to pay the commission and that he is entitled to the commission based on *quantum meruit.* In his third cause of action, Plaintiff alleges entitlement to money damages because he was deprived of his federal rights by RTC acting in its various capacities.[2]

Defendants filed an answer and counterclaims, denying that Plaintiff is entitled to a commission, denying that he has been deprived of federal rights, and alleging that he has not stated causes of action as to RTC–Conservator and RTC–Corporate. In addition, Defendants suggest that Plaintiff failed to disclose material facts concerning his involvement in the purchase of the property, thereby breaching legal duties he owed as real estate broker to the seller of the property. Defendants allege affirmative defenses and counterclaims based on illegality, constructive fraud, and actual fraud.

On March 11, 1994, Defendants moved for partial summary judgment, asking the court to grant judgment on all of Plaintiff's causes of action but preserve for trial Defendants' counterclaims.

### IV. STANDARD FOR SUMMARY JUDGMENT

To grant a motion for summary judgment, this court must find that "there is no genuine issue as to any material fact." Fed.R.Civ.P. 56(c). The judge is not to weigh the evidence, but rather to determine if there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). All evidence should be viewed in the light most favorable to the nonmoving party. *Perini Corp. v. Perini Constr., Inc.,* 915 F.2d 121, 123–23 (4th Cir.1990); *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 364 (4th Cir.1985). If no material factual disputes remain, then summary judgment should be granted if "the record taken as a whole could not lead a rational trier of fact to

---

2. NRC, a private auction company which promoted and conducted the auction, was also named as a defendant, but has been granted summary judgment on all claims against it.

find for the nonmoving party." *Teamsters Joint Council No. 83 v. CenTra, Inc.,* 947 F.2d 115, 119 (4th Cir.1991); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–49, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). If a party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which the party bears the burden of proof at trial, then summary judgment against that party is appropriate. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

■ The Fourth Circuit has stated that the "principles governing summary judgment procedures should be applied in a common sense manner to the realities of the litigation at hand." *Williams v. Howard Johnson's, Inc.,* 323 F.2d 102, 105 (4th Cir.1963). Chief among the functions of summary judgment are those of avoiding long and expensive litigation productive of nothing and curbing the danger that threat of such litigation will be used to harass or to coerce settlement. *Washington Post Co. v. Keogh,* 365 F.2d 965 (D.C.Cir.1966), *cert. denied,* 385 U.S. 1011, 87 S.Ct. 708, 17 L.Ed.2d 548 (1967).

Courts and commentators have stated that a partial summary judgment under Rule 56(d) is an appropriate procedure whereby a court can narrow the scope of trial. *See Koch Industries, Inc. v. United Gas Pipe Line Co.,* 700 F.Supp. 865, 867 (M.D.La. 1988); *Leasing Service Corp. v. Graham,* 646 F.Supp. 1410, 1414–15 (S.D.N.Y.1986); Wright, Miller, and Kane, *Federal Practice and Procedure 2d* § 2723.

## V. ANALYSIS

Plaintiff alleges three causes of action. Defendants are entitled to summary judgment on all three.[3]

## A. FIRST CAUSE OF ACTION— BREACH OF CONTRACT

In his first cause of action, Plaintiff alleges that the July 17, 1992 registration letter sent to NRC over the purported signature of Jefferson Bennett sets forth the terms of the contract to pay a 2% commission on the sale of the Meeting Street Inn, and that no commission has been paid "in violation of the terms of the agreement." (Am. Compl. ¶¶ 14, 18). Defendants are entitled to summary judgment on Plaintiff's breach of contract cause of action because the promotional brochure, not the registration letter, sets forth the basis on which a commission would be paid, and because Plaintiff clearly did not meet the requirements for the payment of a commission.

### 1. The registration letter does not set forth the terms of the contract

■ The registration letter does not set forth the terms of the contract but instead represents only one of several requirements set out in the promotional brochure for the payment of a commission. This is obvious from a reading of the brochure, which states "Brokers must register their prospects in writing," and the letter, which states "I would like to register my client ... as a bidder." The basis on which seller agreed to pay the commission is stated clearly in the promotional brochure. It states that each broker must register his or her client in writing and that no commission would be paid to brokers participating in the purchase of the property. Therefore, the registration letter does not set out the terms of a contract.

■ Ruth A. Hardison testified at her deposition that the second registration letter was faxed to NRC by a secretary at Limehouse Properties who phoned and requested that Hardison sign it and fax it back to acknowledge receipt because it was coming in shortly before the July 24, 1992 deadline. (Hardison Dep. at 24, 42.) Hardison stated she was a temporary clerical employee at NRC and had no authority to bind NRC or RTC. (Hardison Dep. at 12.) Absent any authority, her signature on the letter does not make it a contract.

---

3. Although Defendants make cogent and compelling arguments with respect to Plaintiff's breach of real estate duties, fraud, and illegality, it is unnecessary to consider these defenses in the resolution of this matter.

### 2. Plaintiff did not qualify for the commission

Plaintiff admitted that he received and read the promotional brochure. He stated at his deposition that he "perhaps incorrectly assumed" that the term "participating" as used in the brochure was limited to "ownership". (H.B. Limehouse Dep. at 68.) He stated that he sent the second registration letter after discussing the fact of his marriage to his client with NRC, but that he did not disclose to NRC the full extent of his business relationship with the purchaser or his financial involvement in this purchase. He did not disclose that he was contributing $50,000.00 toward the purchase price, that the Indigo Inn of which he is a 50% partner was contributing another $40,000.00, that he was personally and unconditionally guaranteeing the First Union loan, or that he was pledging his life insurance policy as security for the loan. Neither did he disclose that in addition to being married to Mrs. Limehouse, they were business partners in at least one other inn. There is no dispute as to any material fact for trial because Plaintiff has admitted that he read the requirements regarding commissions and has admitted his participation in the transaction. Thus, Defendants are entitled to summary judgment on the contract cause of action.

### B. SECOND CAUSE OF ACTION— QUANTUM MERUIT

As a second cause of action, Plaintiff claims his brokerage services were rendered for the benefit of Defendants and that he is entitled to recover on the basis of *quantum meruit*. (Am.Compl. ¶ 21.) However, he also alleges in the Amended Complaint that he had a contract for the payment of the commission (Am.Compl. ¶ 19.) At his deposition, he stated he expected the seller of the Meeting Street Inn to pay the commission. (H.B. Limehouse Dep. at 77–81.) He is not entitled to recover under *quantum meruit* because a *quantum meruit* cause of action can not be based on a contract. Furthermore, the *quantum meruit* cause of action fails against RTC–Corporate and RTC–Receiver because Plaintiff cannot prove an essential element of the cause of action in that he never expected to be paid by anyone other than the seller of the Inn.

### 1. Required elements of a *quantum meruit* cause of action

The essential elements of *quantum meruit* are stated in *Muller v. Myrtle Beach Golf & Yacht Club*, 303 S.C. 137, 399 S.E.2d 430 (Ct.App.1990), citing *Webb v. First Fed. Savings & Loan Ass'n*, 300 S.C. 507, 388 S.E.2d 823 (Ct.App.1989).

The essential elements of an action in *quantum meruit* are: (1) valuable services or materials were furnished; (2) for the person sought to be charged; (3) the services or materials were accepted, used, and enjoyed by the person sought to be charged; (4) under such circumstances as reasonably notified the person receiving the services or materials that the plaintiff, in furnishing such services or materials, expected to be paid for them by the person sought to be charged.

### 2. Plaintiff's *quantum meruit* claim fails because it is based on a contract

Relief under a theory of *quantum meruit* is not available if a party bases its action on the existence of a contract. *See Blanton v. Friedberg*, 819 F.2d 489 (4th Cir. 1987) (under South Carolina law, normally "damages for breach of contract and recovery for *quantum meruit* are mutually exclusive remedies"); *Bright v. QSP, Inc.*, 20 F.3d 1300 (4th Cir.1994) (there can be no quasi-contractual recovery where there is an express contract covering the same subject matter); *Olympia Co. v. Gervais F. Favrot Co.*, 342 So.2d 1275 (La.Ct.App.1977). *Quantum meruit* is only available in circumstances where no contract exists, but the obligation to pay is implied by law. *Webb*, 388 S.E.2d at 825. In Paragraph 19 of the Amended Complaint, Plaintiff alleges that "[a]t the time Plaintiff rendered his services for the Defendants, a contract existed between them for the payment of 2% of the sales price of the Inn." Thus, Plaintiff's *quantum meruit* cause of action fails as a matter of law.

**3. Plaintiff's claim for relief on the basis of quantum meruit fails as to RTC–Corporate because Plaintiff admits he expected to be paid by seller and not by RTC–Corporate**

■ Plaintiff admitted that he did not expect to be paid a commission by anyone other than the seller of the Meeting Street Inn. (H.B. Limehouse Dep. at 77, 80.) Both the Purchase and Sale Agreement and the Deed show the seller to be RTC–Conservator. Accordingly, his *quantum meruit* claim fails as to all Defendants other than the seller, which was RTC–Conservator.

The South Carolina Court of Appeals in *Webb* stated that "[t]he theory of a recovery in *quantum meruit* is that the defendant has received a benefit which would be unjust for him to retain without paying for it." *Webb* at 827. An essential element of the cause of action is that the services be provided under circumstances that reasonably notify the person sought to be charged that the plaintiff, "in performing the services, was expecting to be paid by the person sought to be charged." *Id.* There is absolutely no evidence to support the proposition that RTC–Corporate had notice it was expected to pay Plaintiff for brokerage services rendered. If Plaintiff himself expected to be paid the commission by the RTC Conservator as seller of the Meeting Street Inn and not by any other entity, then an essential element of the cause of action is obviously not met. Thus, RTC–Corporate and RTC–Receiver are entitled to summary judgment because Plaintiff admits he did not expect them to pay the commission.

**4. Plaintiff's quantum meruit claim fails because Plaintiff did not provide a valuable service to Defendants**

■ Plaintiff contends he provided a valuable service to Defendants because he brought the high bidder to the auction. (Am. Compl. ¶¶ 19–22.) However, the facts do not support his contention.

RTC does not pay a real estate commission to brokers who participate in a purchase because it gives an advantage over other bidders. Mr. Limehouse undertook to circumvent that policy which is designed to insure the integrity of the auction process. He admitted that title was put in the name of his wife for the specific purpose of protecting his claim to a commission. (H.B. Limehouse Dep. at 93–94.) Mr. and Mrs. Limehouse entered into this transaction together, notwithstanding that only Mrs. Limehouse is Grantee in the deed. Mrs. Limehouse at her deposition admitted they bought the property together. As far as she is concerned, it is in both names. When asked how it was determined the Inn would be titled, she responded, "And actually I wanted then to go in to be all in my name, but we bought it together and it was okay that it was not. So I really didn't think about it, putting it in his name." (Frances Limehouse Dep. at 47.) Plaintiff is not entitled to a commission for providing a brokerage service, because he clearly participated in the transaction as a co-purchaser and hoped to get a 2% discount on his purchase. He attempted to circumvent the legitimate and clearly advertised policy against paying a commission to brokers who participate.

**C. THIRD CAUSE OF ACTION—DEPRIVATION OF FEDERAL RIGHTS**

■ In the third cause of action, Plaintiff seeks money damages for violation of federal rights. He alleges that RTC, in its various capacities, violated his due process and equal protection rights, and that it is answerable in money damages.

In *FDIC v. Meyer*, —— U.S. ——, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994), the United States Supreme Court unanimously held that a plaintiff cannot bring an action for damages directly against federal agencies for violation of constitutional rights. In *Meyer*, the respondent sought damages under a constitutional tort theory when he was fired from his banking position by FSLIC, alleging that such a summary dismissal deprived him of a property right without due process in violation of the Fifth Amendment. The Court declined to recognize the cause of action. In a unanimous opinion, Justice Thomas stated, "If we were to recognize a direct action for damages against federal agencies, we would be creating a potentially enormous financial burden for the federal government.... We

leave it to Congress to weigh the implications of such a significant expansion of government liability." *Id.*

Thus, under *Meyer*, Plaintiff's third cause of action for violation of constitutional rights fails.

## D. RTC "IN ITS VARIOUS CAPACITIES" IS NOT SUBJECT TO THE CLAIMS ASSERTED BY PLAINTIFF BECAUSE RTC WAS AT ALL TIMES ACTING IN ITS CAPACITY AS RECEIVER OR CONSERVATOR FOR FIRST SOUTH SAVINGS BANK, F.S.B. AND NOT IN ITS CORPORATE CAPACITY

Plaintiff has attempted to state causes of action against RTC–Corporate. The facts do not support his claims. FIRREA contemplates that RTC will act in various capacities, and courts have recognized the integrity of those separate capacities. At the time of the sale of the Meeting Street Inn, RTC was acting solely in its capacity as Conservator for First South Savings Bank, F.S.B.

### 1. All transactional documents show RTC–Conservator was the seller of the Meeting Street Inn and the only entity that agreed to pay a commission

Resolution Trust Corporation as Conservator for First South Savings Bank, F.S.B. is the "Seller" identified in the Purchase and Sale Agreement between itself and Frances F. Limehouse. Similarly, it was the "Grantor" in the Deed conveying the Inn to Mrs. Limehouse. Without exception, every transactional document evidencing the sale identifies Resolution Trust Corporation solely in its capacity as Conservator for First South Savings Bank, F.S.B.

Further, Article 18, "Brokers", in the Purchase and Sale Agreement clearly provides that the "Seller" would be responsible for a 2% real estate commission, under strictly defined conditions. Again, the Seller is identified in the Purchase and Sale Agreement as

4. 12 U.S.C. § 1821(d)(2)(F) provides:

"The [RTC] may, as receiver

Resolution Trust Corporation in its capacity as Conservator for First South Savings Bank, F.S.B. RTC–Corporate was not a party to any agreement regarding the payment of a commission and should not be a defendant in the suit.

### 2. FIRREA contemplates that RTC will operate in separate capacities and it acted as contemplated with regard to First South Savings Bank

Resolution Trust Corporation in its corporate capacity is a discrete legal entity from RTC in either of its capacities as receiver or conservator. *FDIC v. Bernstein,* 944 F.2d 101 (2nd Cir.1991). FIRREA contemplates that RTC will act in separate capacities when it takes over a failed institution and, in fact, an inherent and essential aspect of the statutory scheme is the separate capacities doctrine. Section 1821(c) provides:

> Notwithstanding any other provision of Federal law, the law of any State, or the constitution of any State, the Corporation may accept appointment and act as conservator or receiver for any insured depository institution upon appointment in the manner provided in paragraph (2) or (3).

RTC accepted appointment as conservator for First South Savings Bank, F.S.B. and acted in that capacity when it sold the Meeting Street Inn. Plaintiff can not ignore the fact that his claim is only against the seller of the property.

The RTC's activities in this case were straightforward and ordinary. On April 23, 1992, the OTS ordered First South Savings Bank closed and appointed the RTC as Receiver. On the same date, pursuant to 12 U.S.C. § 1821(d)(2)(F),[4] the Receiver organized, and the OTS chartered, First South Savings Bank, F.S.B. Also on that date, the RTC was appointed as conservator for First South Savings Bank, F.S.B., which in contrast to the closed First South Savings Bank, Inc., was a new, open, and operating savings association.

(i) ... organize a new Federal savings association to take over such assets or liabilities as the [RTC] may deem to be appropriate."

Also on the same date, pursuant to the explicit authority given it in 12 U.S.C. § 1821(d)(2)(G)(i)(II), the Receiver sold certain First South Savings Bank, Inc.'s assets to First South Savings Bank, F.S.B. Section 1821(d)(2)(G)(i)(II) provides:

The [RTC] may, as conservator or receiver: transfer any asset or liability of the institution in default ... without any approval, assignment or consent with respect to such transfer.

Among the assets transferred to First South Savings Bank, F.S.B. was the Receiver's right, title, and interest in the Meeting Street Inn. In July 1992, acting pursuant to power given in § 1821(d)(2)(B) to "operate the institution," RTC–Conservator sold the Meeting Street Inn. Plaintiff has no legally cognizable right against RTC–Corporate because RTC has acted only as conservator or receiver and strictly in accordance with the statutory scheme.

The Fifth Circuit has noted that "the RTC, in its corporate capacity, is not liable for claims against RTC in its capacity as conservator or receiver." *Howerton v. Designer Homes by Georges, Inc.*, 950 F.2d 281, 283 (5th Cir.1992); *accord Dababneh v. FDIC*, 971 F.2d 428 (10th Cir.1992) (complaint against FDIC Corporate dismissed because alleged misconduct of FDIC–Receiver did not state a claim against FDIC–Corporate); *RTC v. Plumlee*, 745 F.Supp. 1462 (E.D.Ark. 1990) (court lacked jurisdiction over counterclaim against RTC in its corporate capacity in a suit brought by RTC as conservator).

■ Where RTC in its corporate capacity is not obligated on the contract, as is the case in this matter, RTC–Corporate is not the correct party defendant. *Trigo v. FDIC*, 847 F.2d 1499, 1502 (11th Cir.1988).

The Eighth Circuit stated in *RTC v. CedarMinn Bldg. Ltd. Partnership*, 956 F.2d 1446 (8th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 94, 121 L.Ed.2d 56 (1992):

We refuse to adopt ... a cavalier attitude about the distinction in roles between conservator and receiver.

At least as early as the 1930's, it was recognized that the purpose of a conservator was to maintain the institution as an ongoing concern.... Receivers, on the other hand, have been empowered to liquidate the institution.

This distinction was not only specifically recognized in FIRREA, it was emphasized in the Conference Report.

The title ... distinguishes between the powers of a conservator and a receiver, making clear that a conservator operates or disposes of an institution as a going concern while the receiver has the power to liquidate and wind up the affairs of an institution. H.R.Conf.Rep. No. 101–209, 101st Cong. 1st Sess. 398 (1989).

*Id.* at 1454 (citations omitted).

The distinction made by the Court in *CedarMinn* between RTC–Conservator and RTC–Receiver applies equally to the distinction between RTC–Corporate and RTC–Conservator.

■ In *Beighley v. FDIC*, 868 F.2d 776, 785 (5th Cir.1989), the court stated that claims against FDIC–Receiver cannot be used to offset claims brought by FDIC–Corporate because Corporate is a separate entity and is not responsible for the acts of Receiver. The *Beighley* decision is consistent with the well settled principle that "[g]overnment agencies do not merge into a monolith...." *Hughes v. United States*, 701 F.2d 56, 58 (7th Cir.1982). FDIC, acting in its corporate capacity, may not be sued or subject to defenses resulting from acts or omissions of the FDIC, acting in its receivership capacity. "Each capacity is designed to serve a different purpose and each is governed by an express statute." *FDIC v. Sumner Fin. Corp.*, 602 F.2d 670, 679 (5th Cir.1979); *see FDIC v. Condit*, 861 F.2d 853 (5th Cir.1988); *FDIC v. Bernstein*, 944 F.2d 101, 106 (2d Cir.1991); *see also Trigo v. FDIC*, 847 F.2d 1499, 1502–03 (11th Cir.1988); *FDIC v. La Rambla Shopping Ctr.*, 791 F.2d 215, 220 (1st Cir.1986); *In re F & T Contractors, Inc.*, 718 F.2d 171, 180–81 (6th Cir.1983).

Therefore, RTC–Corporate is entitled to summary judgment on the additional ground that it was not the entity involved in the transaction with the Limehouses.

## VI. CONCLUSION

Plaintiff is not entitled to recover for breach of contract, in *quantum meruit,* or for deprivation of federal rights. Accordingly, it is

**ORDERED** that Defendant RTC's Motion for Partial Summary Judgment be **GRANTED.**

**AND IT IS SO ORDERED.**