_____

No. 95-1402
_____

United States of America, on          *
behalf of Resolution Trust            *
Corporation,                          *
                                      *
    Plaintiff-Appellee,               *
                                      *
        v.                            *   Appeal from the United States
                                      *   District Court for the Southern
Walter F. Schroeder,                  *   District of Iowa.
                                      *
    Defendant-Appellant,              *
                                      *
Jack Schroeder,                       *
                                      *
    Intervenor-Defendant.             *
                                  _____

No. 95-1403
_____

United States of America, on          *
behalf of Resolution Trust            *
Corporation,                          *
                                      *
    Plaintiff-Appellee,               *
                                      *
        v.                            *   Appeal from the United States
                                      *   District Court for the Southern
Walter F. Schroeder,                  *   District of Iowa.
                                      *
    Defendant,                        *
                                      *
Jack Schroeder,                       *
                                      *
 Intervenor-Defendant-Appellant.*

                                  _____

                Submitted:  October 20, 1995

                    Filed:  June 5, 1996
                                  _____

Before McMILLIAN, ROSS and BOWMAN, Circuit Judges.

                                  _____

ROSS, Circuit Judge.

The United States initiated this action in order to reduce a $250,000 restitution order, entered in a criminal proceeding against appellant Walter Schroeder in favor of the Resolution Trust Corporation (RTC), into a civil judgment. Walter filed a counterclaim against the United States, claiming he was entitled to a setoff against the restitution order for amounts he believed the RTC owed him due to his contract with a failed financial institution, for which the RTC acted as receiver.

Walter now appeals from the district court's[1] order granting the United States' motion to dismiss the counterclaim and motion for summary judgment based on the court's conclusion that the United States is not a proper counterclaim defendant under a contract theory of recovery. Jack Schroeder also appeals from the district court's order denying his motion to intervene. We affirm.

In November 1986, Walter Schroeder entered into an agreement to purchase Hawkeye Bancorporation Mortgage Company (Hawkeye). Prior to the execution of the final draft of the agreement, Walter assigned a one-half interest in the agreement to his father, Jack Schroeder, in return for Jack's assistance in financing the acquisition. In January 1987, the Schroeders entered into an agreement with The Statesman Group, Inc. (Statesman Group), whereby the parties agreed to join together to purchase Hawkeye. To facilitate the acquisition, Statesman Mortgage Holding Company (Holding Company) was formed and the stock purchase agreement was assigned to the Holding Company. The Holding Company purchased Hawkeye on January 13, 1987, and changed the name to Statesman Mortgage Company (Statesman Mortgage). The Statesman Group owned 60% of the stock in the Holding Company and the Schroeders each

_____

[1]The Honorable Charles R. Wolle, Chief United States District Judge for the Southern District of Iowa.

owned a 20% share.  The sole asset of the Holding Company was the stock of Statesman Mortgage.  As part of the overall transaction, the parties also entered into a buy/sell agreement relating to their shares of the Holding Company.

During 1988, the Statesman Group decided to expand Statesman Mortgage and, in order to do so, wanted to become the sole owner of the Holding Company and of Statesman Mortgage.  On December 28, 1988, an agreement was reached to purchase the Schroeders' interest in the companies.  In two separate contracts, referred to as deferred compensation agreements, the Statesman Group agreed to pay the Schroeders $500,000 each, with payments to be made in yearly installments, for their respective interests in the companies.

Following the transfer, a new corporate structure was created, with the Statesman Group as the parent corporation.  The Holding Company was dissolved and a subsidiary corporation was created, referred to as the Statesman Bank for Savings, and Statesman Mortgage became its subsidiary. A financial statement shows that for the year ended December 31, 1989, the Schroeders received a total of $169,095.00 pursuant to their deferred compensation agreements.  However, no further payments were made.

On July 26, 1990, the RTC seized the Statesman Bank for Savings.  As part of the seizure, the RTC also seized control of the bank's subsidiaries, including Statesman Mortgage.  The RTC then began liquidating Statesman Mortgage, selling off substantially all of its assets and effectively putting Statesman Mortgage out of business.

The Schroeders assert that shortly after the seizure, they advised the RTC of their contracts with Statesman Mortgage and of their right to be paid for the assets they had transferred.  The Schroeders unsuccessfully attempted to exercise their buy/sell agreement during August of 1990.  In April of 1991, the Schroeders

advised the RTC, by way of a letter to Statesman Mortgage, that the sale of substantially all of the assets of Statesman Mortgage was an event of default under the terms of their agreements and caused the acceleration of the payments due thereunder. They demanded full payment in accordance with the terms of their agreements.

During January 1992, in an action unrelated to his dealings with the Statesman Group or with Statesman Mortgage, Walter Schroeder pled guilty to one count of wire fraud in violation of 18 U.S.C. § 1343. He was sentenced on October 1, 1992, and was ordered to pay restitution to the victims of his actions, including $250,000 to the RTC. On August 3, 1993, the RTC filed this action in order to turn the restitution order into a civil judgment.

In June 1994, Walter Schroeder filed his answer and counterclaim, admitting the court-ordered restitution, but claiming he was entitled to a setoff against the restitution order for amounts he believed the RTC owed him due to his contract with Statesman Mortgage. Jack Schroeder also sought to intervene under Fed. R. Civ. P. 24(b), on the ground that he was a party to a deferred compensation agreement with Statesman Mortgage similar to the one alleged by Walter in his counterclaim. The district court granted the RTC's motion to dismiss Walter's counterclaim and denied Jack's motion to intervene. The court then granted summary judgment in favor of the RTC, ordering Walter to pay $250,000 to the RTC.

It is important to note at the outset that Walter Schroeder's claim is directed against the United States Government on behalf of the RTC in its corporate capacity and not against the RTC in its capacity as receiver for the failed Statesman Bank for Savings, a receivership that has long since been terminated. In his counterclaim, Walter does not seek payment from the assets of the failed financial institution, but from the United States Treasury itself. This distinction is critical to the resolution of this

case.

Walter relies on O'Melveny & Myers v. FDIC, 114 S. Ct. 2048, 2054 (1994), for the proposition that the RTC steps into the shoes of the failed savings and loan, obtaining the rights and, by extension, the liabilities of the insured financial institution. Accordingly, he asserts that the RTC is liable for breaching his contract with Statesman Mortgage. Schroeder's analysis fails in one important aspect, namely that it is the RTC as receiver that assumes certain rights and liabilities of the failed financial institution and not the RTC in its corporate capacity. The Supreme Court in O'Melveny makes clear that under 12 U.S.C. § 1821(d)(2)(A)(i), "the FDIC as receiver 'steps into the shoes' of the failed S & L." Id. at 2054 (emphasis added).

Under the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA), Pub. L. 101-73, 103 Stat. 183, the RTC performs separate and distinct functions in its receiver and corporate capacities. In the former capacity, the RTC marshals assets of failed institutions for the benefit of its creditors, 12 U.S.C. § 1821(d), and in the latter, it acts as overseer of insured depository institutions. 12 U.S.C. § 1441a(b)(3). Under the "separate capacities" doctrine, it is well established that the RTC, when acting in one capacity, is not liable for claims against the RTC acting in one of its other capacities. See, e.g., Howerton v. Designer Homes by Georges, Inc., 950 F.2d 281, 283 (5th Cir. 1992) ("The RTC, in its corporate capacity, is not liable for claims against the RTC in its capacity as conservator or receiver."); FDIC v. Roldan Fonseca, 795 F.2d 1102, 1109 (1st Cir. 1986) (discussing separate capacities of FDIC); Trigo v. FDIC, 847 F.2d 1499, 1502 (11th Cir. 1988) (same).[2]

---

[2]Reference to FDIC cases is appropriate because "Congress gave the RTC all of the receivership and conservatorship powers it granted the FDIC." RTC v. Cedarminn Bldg. Ltd., 956 F.2d 1446, 1450 n.5 (8th Cir.), cert. denied, 506 U.S. 830 (1992). See also 12 U.S.C. § 1441a(b)(4).

In this case, Walter's counterclaim stems from the alleged breach of his contract with Statesman Mortgage by the RTC in its capacity as receiver for the failed institution. None of the allegations of Walter's counterclaim involve the actions of RTC Corporate -- it was not a party to the deferred compensation agreements and did not assume the liabilities of those agreements by "stepping into the shoes" of the failed institution upon the establishment of the receivership. Its duties, purpose and liabilities were separate and distinct from those of the RTC as receiver. Accordingly, we conclude that the district court properly dismissed Walter's counterclaim for failing to state a claim upon which relief can be granted.[3]

Because Walter has failed to establish a legal obligation on the part of the United States for breach of contract, we also reject Walter's contention that he is entitled to a setoff against the restitution order accorded the United States in the criminal matter.

Finally, we conclude the district court did not abuse its discretion in denying Jack Schroeder's motion for leave to

---

[3]Even if we were to ignore the separate capacities doctrine, we would nevertheless conclude that the counterclaim was properly dismissed for lack of subject matter jurisdiction due to Walter's failure to exhaust administrative remedies. See Bueford v. RTC, 991 F.2d 481, 484 (8th Cir. 1993) (administrative exhaustion is required before any court acquires subject matter jurisdiction over a claim brought against the RTC as receiver). See also 12 U.S.C. § 1821(d)(6); § 1821(d)(13)(D). Walter was required to present his claim to the RTC in the first instance, prior to filing his counterclaim. See National Union Fire Ins. Co. v. City Savings, F.S.B., 28 F.3d 376, 394 (3d Cir. 1994) ("[U]nless counterclaims were properly submitted to the administrative claims procedure of FIRREA, they would be subject to the jurisdictional bar of § 1821(d)(13)(D)."). It is undisputed that Walter did not file a claim through the administrative claims process prior to filing his counterclaim. Therefore, this court is without subject matter jurisdiction to consider his claim.

intervene pursuant to Fed. R. Civ. P. 24(b).  Jack sought to intervene based on his deferred compensation agreement with Statesman Mortgage, which was identical to the agreement that formed the basis of Walter's permissive counterclaim.  See Fed. R. Civ. P. 13(b).  We reject Jack's suggestion that this permissive counterclaim is within the definition of the phrase "main action" as used in Rule 24(b).  Instead, we agree with the district court that Jack's claim has neither a question of law nor fact in common with the main action, namely the United States' suit for money damages based on the restitution order.

Based on the foregoing, the judgment of the district court is affirmed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.