116 F.3d 1142
 FEDERAL DEPOSIT INSURANCE CORPORATION, Manager of the FSLIC
Resolution Fund, Plaintiff-Appellee,
v.
William K. RAHN, Individually and as Independent Personal
Representative of the Estate of Frederick H. Rahn,
deceased, and Richard S. Hennes, jointly
and severally, Defendants-Appellants,
Franklin H. Smith, Thomas W. Smith, Robert H. Durren, and
Paul G. Freudenberg, jointly and severally, Defendants.
 No. 96-1207.
 United States Court of Appeals,
Sixth Circuit.
 Argued Dec. 3, 1996.
Decided June 23, 1997.
 
 J. Scott Watson (argued), Federal Deposit Insurance Corporation, Appellate Litigation Section, Munsell St. Clair (briefed), Resolution Trust Corp., Washington, DC, for Plaintiff-Appellee.
 Alfred M. Butzbaugh (argued and briefed), Butzbaugh & Dewane, St. Joseph, MI, for Defendants-Appellants.
 Before: LIVELY, NELSON, and RYAN, Circuit Judges.
 OPINION
 LIVELY, Circuit Judge.
 
 
 1
 This case involves an attempt by officers and directors of a failed thrift institution to be indemnified for their costs and attorney fees incurred in the successful defense of a suit brought against them by the Resolution Trust Corporation (RTC). The district court granted judgment in favor of the RTC on this issue and we now affirm.
 
 I.
 
 2
 Like so many financial institutions in the 1980s, Peoples Savings Association, F.A., of St. Joseph, Michigan, diversified its loan portfolio to include what were (at least in hindsight) risky commercial real estate loans. Of particular concern to the present lawsuit is a series of five loans made by Peoples to finance the development of condominium projects in Florida--loans that were approved by all of the defendants in their capacity as Peoples directors. When the real estate market soured in the late 1980s, the developers of these projects defaulted on their notes and Peoples suffered losses in excess of $7 million.
 
 
 3
 After its balance sheet deteriorated, the Federal Home Loan Bank Board (Bank Board) declared Peoples insolvent on March 9, 1989, and appointed a conservator. On February 2, 1990, the Office of Thrift Supervision (OTS)--which Congress created to replace the Bank Board as the regulatory watchdog for the federal thrift industry--directed the Resolution Trust Corporation in its capacity as receiver (RTC-Receiver) to wind up the business affairs of the failed savings and loan. RTC-Receiver immediately conveyed by contract of sale certain Peoples assets to the Resolution Trust Corporation in its corporate capacity (RTC-Corporate). Specifically, RTC-Corporate assumed "all the Receiver's right, title and interest, free and clear of any lien [or] encumbrance ... in and to any and all actions, judgments or claims of the Receiver against (i) any officer, director ... or any other Person employed or retained by the Failed Association ... arising out of any act or omission of such Person in such capacity...."
 
 
 4
 RTC-Corporate asserted its rights in these choses in action on March 5, 1992, when it filed the present action in district court charging the defendants with negligence, gross negligence, breach of their fiduciary duty of care, and breach of contract. These allegations all stemmed from Peoples' financing of the Florida condominium projects. The trial court ultimately granted summary judgment for the defendants on the claim of gross negligence, and a jury returned a verdict in the defendants' favor on the three remaining counts.
 
 
 5
 On August 30, 1995, the defendants filed a motion seeking payment of their attorney fees and expenses (which they estimated to be $550,000) by RTC-Corporate in accordance with 12 C.F.R. § 545.121 (1995). The district court entered an opinion and order on December 14, 1995, denying the motion, and the defendants have appealed. For purposes of this appeal, the Federal Deposit Insurance Corporation (FDIC) has been substituted for the Resolution Trust Corporation, which ceased to exist on December 31, 1995, pursuant to a statutory sunset provision. See 12 U.S.C. § 1441a(m)(1) (Supp. V 1993).
 
 II.
 A.
 
 6
 Indemnification of directors and officers of federal savings associations is governed by 12 C.F.R. § 545.121, which the OTS promulgated pursuant to the Financial Institutions Reform, Recovery, and Enforcement Act of 1989, Pub.L. No. 101-73, 103 Stat. 183 (codified as amended in scattered sections of 12 U.S.C.) (FIRREA). In pertinent part, that regulation now reads:
 
 
 7
 § 545.121 Indemnification of directors, officers and employees.
 
 
 8
 A Federal savings association shall indemnify its directors, officers, and employees in accordance with the following requirements:
 
 
 9
 (a) Definitions and rules of construction.
 
 
 10
 (1) Definitions for purposes of this section.
 
 
 11
 * * *
 
 
 12
 (2) References in this section to any individual or other person, including any association, shall include legal representatives, successors, and assigns thereof.
 
 
 13
 (b) General. Subject to paragraphs (c) and (g) of this section, a savings association shall indemnify any person against whom an action is brought or threatened because that person is or was a director, officer, or employee of the association, for:
 
 
 14
 * * *
 
 
 15
 (2) Reasonable costs and expenses, including reasonable attorney's fees, actually paid or incurred by that person in defending or settling such action, or in enforcing his or her rights under this section if he or she attains a favorable judgment in such enforcement action.
 
 
 16
 (c) Requirements. Indemnification shall be made to such [person] under paragraph (b) of this section only if:
 
 
 17
 (1) Final judgment on the merits is in his or her favor;....
 
 
 18
 These provisions appear in Part 545 of the OTS Regulations, titled "Operations." The regulations contained in Part 545 dictate operating policies, practices and procedures of federal savings associations in minute detail.
 
 
 19
 In a written opinion, the district court denied the motion for indemnification for three reasons. As the primary ground for its decision, the district court relied upon RTC v. Eason, 17 F.3d 1126 (8th Cir.1994), which holds that the indemnity provision in 12 C.F.R. § 545.121 applies only to ongoing financial institutions, not to those in receivership. As alternative grounds for its decision, the district court ruled that RTC-Receiver was not Peoples' legal successor or assign as contemplated in § 545.121(a)(2) and that RTC-Corporate did not, by entering into the February 2, 1990, contract of sale, assume any indemnification liability of RTC-Receiver.B.
 
 
 20
 The panel is divided with respect to the first two grounds relied upon by the district court, but is unanimous in agreeing with the district court's third reason for denying indemnification. Accordingly, we pretermit discussion of the first two reasons and affirm on the basis of the third.
 
 III.
 A.
 
 21
 As the third ground for its decision, the district court determined that the officers and directors had sought indemnification from the wrong party. Noting that the RTC operates in independent receiver and corporate capacities, the court held that "[t]he RTC, in its corporate capacity, is not liable for claims against the RTC in its capacity as receiver." Continuing, the court stated:
 
 
 22
 In the present case, the RTC-Corporate obtained the right to bring this action against the former directors of Peoples from RTC-Receiver pursuant to a contract of sale. As noted above, RTC-Corporate purchased the right free and clear of any lien or encumbrance. Whatever liability exists for attorney fees and costs thus remains with RTC-Receiver, and was not transferred to RTC-Corporate, who is the plaintiff in this suit.
 
 
 23
 In addition to the language noted by the district court, the contract also states that RTC-Corporate "is not obligated hereby to assume or discharge any liability of the Failed Association...." The defendants, however, argue that these contractual disclaimers are ineffective because § 545.121 "marries mandatory indemnification to a cause of action against a director by imposing liability on successors and assigns." The defendants do not equivocate but flatly assert that "RTC-Corporate does not have the option to reject imposition of § 545.121 by contract."
 
 
 24
 The problem with this argument is that numerous cases, in the Sixth Circuit and elsewhere, acknowledge that both the FDIC and the RTC function in several different guises (as receiver, as conservator, and as a corporation) and that each organization can conduct arm's length transactions with itself in these various capacities. This crucial distinction has been described as follows:
 
 
 25
 In a typical purchase and assumption transaction, the FDIC acts in two distinct capacities. On one hand, the FDIC acts as receiver of a failed bank, marshalling its assets in order to pay the bank's creditors. On the other hand, the FDIC-Corp. acts as an insurer of member banks. In its corporate capacity, the FDIC must make the most of the assets purchased from the FDIC as receiver. Considering its goal of maximizing the value of a failed bank's assets, we cannot conclude that the FDIC-Corp. must accept the liabilities that accompany assets which stable banks label as "unacceptable." Commercial banks refuse to buy these assets because the accompanying liabilities are usually greater than the value of the assets. To require the FDIC-Corp. to accept the liabilities accompanying unacceptable assets would seriously deplete and very probably eliminate the funds necessary to insure member banks.
 
 
 26
 Trigo v. FDIC, 847 F.2d 1499, 1502 n. 3 (11th Cir.1988) (internal citations omitted). This discussion of the FDIC's powers applies equally to the RTC. See United States ex rel. RTC v. Schroeder, 86 F.3d 114, 117 n. 2 (8th Cir.1996) (quoting RTC v. CedarMinn Bldg. Ltd. Partnership, 956 F.2d 1446, 1450 n. 5 (8th Cir.), cert. denied, 506 U.S. 830, 113 S.Ct. 94, 121 L.Ed.2d 56 (1992)) ("Reference to FDIC cases is appropriate because 'Congress gave the RTC all of the receivership and conservatorship powers it granted the FDIC'."). As the Trigo decision illustrates, when the FDIC or the RTC functions in dual capacities, the corporate form can limit liability through a purchase and assumption agreement or a contract of sale. See also In re F & T Contractors, Inc., 718 F.2d 171, 180 (6th Cir.1983) (citing FDIC v. Citizens Bank & Trust Co., 592 F.2d 364, 368 (7th Cir.), cert. denied, 444 U.S. 829, 100 S.Ct. 56, 62 L.Ed.2d 37 (1979)); RTC v. Gallagher, No. 92-1091, 1992 WL 370248 (N.D.Ill.Dec. 2, 1992); RTC v. Edie, No. 94-772, 1994 WL 744672 (D.N.J. Oct.4, 1994).
 
 
 27
 The Edie court, in fact, interprets contractual language that appears to be identical to that contained in the contract of sale involved in the present action. In rejecting a director's claim for indemnification made pursuant to a state statute, the Edie court held that "these provisions insulate the RTC in its corporate capacity from counterclaims for indemnification raised by former directors of failed S & Ls." Id. at * 7.
 
 B.
 
 28
 Whatever indemnification liability may exist (if any) remains with RTC-Receiver, which is not a party to this action. RTC-Corporate, moreover, cannot be held liable for the debts of or claims against RTC-Receiver. Home Capital Collateral, Inc. v. FDIC, 96 F.3d 760, 764 (5th Cir.1996). The proper course of action for the defendants would have been to implead RTC-Receiver as a third-party defendant. See FED.R.CIV.P. 14; In re F & T Contractors, 718 F.2d at 182 ("We conclude that FDIC-corporation is not liable on the contract action concerning the letters of credit. FDIC-receiver was the proper party to sue with respect to the letters...."). The defendants chose not to do this, however, and the district court properly found that RTC-Corporate did not succeed to any indemnification liability. See Eason, 17 F.3d at 1135.
 
 Conclusion
 
 29
 The FDIC and RTC stand in quite a different posture than a federal thrift, whether solvent or insolvent. By enacting FIRREA, Congress assigned to these regulatory agencies the unenviable task of cleaning up a devastated federal thrift industry. As such, the agencies are entitled to certain protections, and permitting RTC-Corporate to acquire the otherwise unmarketable assets of a failed association free and clear of all liens and encumbrances is such a protection.
 
 
 30
 The judgment of the district court is AFFIRMED.