*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 05a0074p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

In re: KAY LORRAINE LEWIS,

*Debtor.*

—————————————————————

SUPERIOR BANK, FSB,

*Appellant,*

*v.*

JAMES W. BOYD, Chapter 7 Bankruptcy Trustee,

*Appellee.*

No. 02-2330

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 02-00031—David W. McKeague, District Judge.

Argued: September 16, 2004

Decided and Filed: February 16, 2005

Before: GUY and SUTTON, Circuit Judges; CARR, Chief District Judge.[*]

_____

### COUNSEL

**ARGUED:** Walter J. Russell, RUSSELL & BATCHELOR, Grand Rapids, Michigan, for Appellant. Kelly M. Hagan, ZIMMERMAN, KUHN, DARLING, BOYD, TAYLOR & QUANDT, Traverse City, Michigan, for Appellee. **ON BRIEF:** Walter J. Russell, Stephen C. Bransdorfer, RUSSELL & BATCHELOR, Grand Rapids, Michigan, for Appellant. Kelly M. Hagan, ZIMMERMAN, KUHN, DARLING, BOYD, TAYLOR & QUANDT, Traverse City, Michigan, for Appellee.

GUY, J., delivered the opinion of the court, in which SUTTON, J., joined. CARR, Chief D. J. (pp. 12-14), delivered a separate concurring opinion.

_____

### OPINION

_____

RALPH B. GUY, JR., Circuit Judge. Defendant, Superior Bank FSB (Superior Bank), appeals from the grant of summary judgment in favor of the trustee, James W. Boyd, avoiding

_____

[*]The Honorable James G. Carr, Chief United States District Judge for the Northern District of Ohio, sitting by designation.

1

Superior Bank's mortgage on the debtor's real property as a preferential transfer pursuant to 11 U.S.C. § 547. Superior Bank argued that its mortgage was equitably subrogated to a prior recorded mortgage. After the appeal was filed in this Court, Superior Bank challenged the subject matter jurisdiction of the bankruptcy court pursuant to the Financial Institution Reform, Recovery and Enforcement Act (FIRREA). 12 U.S.C. § 1821(d)(13)(D) and § 1821(j). After review of the record, the applicable law, and the arguments presented on appeal, we find that the bankruptcy court retained jurisdiction and affirm the grant of summary judgment.

## I.

In December 1998, the debtor, Kay Lorraine Lewis, purchased residential property in Mancelona, Michigan, with funds borrowed from Empire National Bank. Empire National Bank's mortgage was recorded on December 17, 1998.

Debtor thereafter quitclaimed the property to her son, Ronald Bigger, and her son's fiancee, Jessica DePeel. When the debtor wanted to secure refinancing from Superior Bank to repay the Empire National Bank note, Bigger and DePeel quitclaimed the property to the debtor, Bigger, and DePeel. On September 9, 1999, the debtor executed a note to Superior Bank; and the debtor, Bigger, and DePeel executed a mortgage on the property to secure the note. Superior Bank did not record the mortgage until April 17, 2000.

On May 4, 2000, less than a month after the mortgage was recorded, debtor filed for Chapter 7 bankruptcy and listed Superior Bank as a secured creditor. Superior Bank filed a motion for relief from automatic stay on the mortgaged property, which was subsequently withdrawn on October 27, 2000. On November 11, 2000, the trustee filed the complaint in this adversary action to avoid Superior Bank's mortgage.

A little more than six months later, on July 27, 2001, Superior Bank was placed in receivership pursuant to the provisions of FIRREA.[1] On November 15, 2001, the bankruptcy court granted partial summary judgment in favor of the trustee and avoided Superior Bank's mortgage.[2] After that judgment was affirmed by the district court on appeal, Superior Bank filed a notice of appeal in this Court.

Subsequently, the trustee filed in the bankruptcy court a notice of intent to sell the property. On March 4, 2003, Superior Bank filed objections and, nearly two years after the FDIC was appointed as receiver, asserted for the first time that the bankruptcy court lacked jurisdiction pursuant to FIRREA. After overruling Superior Bank's objections, the bankruptcy court concluded that it could not rule on Superior Bank's jurisdictional challenge because it was, in effect, a collateral attack on the judgment that was pending on appeal before this Court. Superior Bank then

---

[1] The July 27, 2001 order was entered by the Director of the Office of Thrift Supervision (OTS) and is entitled "Pass-Through Receivership of a Federal Savings Association Into a De Novo Federal Savings Association That is Placed Into Conservatorship With the FDIC." The FDIC was appointed receiver of Superior Bank (designated in the order as the "Old Thrift") pursuant to 12 U.S.C. § 1464(d)(2) and 12 U.S.C. § 1821(c)(5). The order approved the FDIC's request for the issuance of a new federal mutual savings association charter as a successor to Superior Bank (designated the "New Thrift"). The order also approved the transfer of the assets and liabilities of the Old Thrift to the successor New Thrift as the FDIC deems appropriate. The FDIC was appointed conservator of the New Thrift.

[2] The parties thereafter stipulated to the dismissal with prejudice of the remaining counts in the complaint.

filed a motion to dismiss for lack of jurisdiction in this Court. We denied the motion without prejudice and directed the parties to brief the jurisdictional issue in this appeal.[3]

## II.

### A.      Subject Matter Jurisdiction

The existence of subject matter jurisdiction may be raised at any time, by any party, or even *sua sponte* by the court itself. *Cmty. Health Plan of Ohio v. Mosser*, 347 F.3d 619, 622 (6th Cir. 2003). Therefore, we will decide whether the bankruptcy court had subject matter jurisdiction even though this issue was not raised until after the appeal was filed.

The FDIC, as receiver, has never appeared in this case. After oral argument, we provided an opportunity for the FDIC to state its position on Superior Bank's jurisdictional arguments. In its brief response, the FDIC opined that the bankruptcy court lacked jurisdiction under § 1821(d)(13)(D). The application of FIRREA to an action pending at the time a receiver is appointed presents an issue of first impression in this circuit.

FIRREA was enacted during the savings and loan insolvency crisis to enable the FDIC and the Resolution Trust Company (RTC) to efficiently and expeditiously wind up the affairs of hundreds of failed financial institutions. *See Freeman v. FDIC*, 56 F.3d 1394, 1398 (D.C. Cir. 1995). Section 1821 of FIRREA establishes an administrative process for handling claims made against the assets of a failed bank that has been placed under receivership. Before addressing the jurisdictional issues presented in this case, we will briefly review the administrative claims process under FIRREA.

Section 1821(d)(3)(A) states that the FDIC "may, as receiver, determine claims in accordance with the requirements of this subsection and regulations prescribed under paragraph (4)." 12 U.S.C. § 1821(d)(3)(A). The FDIC must publish and mail a notice to the bank's creditors to present their claims by a specified date, which cannot be less than 90 days after publication of the notice. 12 U.S.C. § 1821(d)(3)(B) and (C).

If a claim is filed with the FDIC as receiver, the FDIC has 180 days to allow or disallow the claim and to notify the claimant of that determination. 12 U.S.C. § 1821(d)(5)(A)(i). Claims filed after the date specified in the notice must be disallowed unless "the claimant did not receive notice of the appointment of the receiver in time to file such claim before such date." 12 U.S.C. § 1821(d)(5)(C)(ii)(I). In such a case, the FDIC may consider the claim provided the claim is "filed in time to permit payment." 12 U.S.C. § 1821(d)(5)(C)(ii)(II).

If the FDIC disallows a claim or fails to either allow or disallow the claim within the 180-day period, a claimant may, within 60 days, request further administrative review or file suit on such claim in the district court located in the failed bank's principal place of business or the District of Columbia. 12 U.S.C. § 1821(d)(6)(A). Alternatively, a claimant can *continue* an action commenced before the appointment of the receiver. *Id.* If the claimant does not seek either administrative review or judicial determination within that 60-day period, the claim is deemed disallowed and the disallowance "shall be final, and the claimant shall have no further rights or remedies with respect to such claim." 12 U.S.C. § 1821(d)(6)(B)(ii).

---

[3]After Superior Bank appealed the bankruptcy court's order confirming the sale of the property, the district court stayed the order until we decide the jurisdictional issue. The district court later stayed all further proceedings pending the appeal in this case.

### 1.     12 U.S.C. § 1821(j)

Superior Bank argues that 12 U.S.C. § 1821(j) barred the bankruptcy court from avoiding the mortgage.  Section 1821(j) provides:

(j)     Limitation on court action

Except as provided in this section, no court may take any action, except at the request of the Board of Directors by regulation or order, to restrain or affect the exercise of powers or functions of the Corporation as a conservator or a receiver.

In *Freeman*, 56 F.3d at 1394, the plaintiffs brought an action against the FDIC as receiver for Madison National Bank seeking injunctive and declaratory relief to prevent foreclosure on their home.  The D.C. Circuit held that § 1821(j) barred the district court from granting the requested equitable relief.  The court noted that in pursuing foreclosure, the FDIC was exercising its statutory authority to collect all obligations and money due to Madison National Bank and proceed to realize upon that failed institution's assets.  12 U.S.C. § 1821(d)(2)(B).  Thus, § 1821(j) barred the court from restraining the foreclosure and rescinding the underlying loan because that would restrain or affect the FDIC's exercise of its powers or functions as Madison National Bank's receiver.  *See also United Liberty Life Ins. Co. v. Ryan*, 985 F.2d 1320, 1329 (6th Cir. 1993), where we reached the same result when a party challenged in a declaratory action the receiver's acts in transferring assets of the failed institution.

In this case, there is no evidence that the FDIC has sought to exercise any of its powers vis-a-vis the debtor's property.  On this record, therefore, we cannot say that the bankruptcy court's avoidance of Superior Bank's mortgage pursuant to the Bankruptcy Code restrained or affected the FDIC's exercise of its powers or functions as Superior Bank's receiver in contravention of § 1821(j).

### 2.     12 U.S.C. § 1821(d)(13)(D)

Superior Bank also argues that the bankruptcy court lacked jurisdiction to avoid its mortgage pursuant to 12 U.S.C. § 1821(d)(13)(D), which provides:

**(D)     Limitation on judicial review**

Except as otherwise provided in this subsection, no court shall have jurisdiction over –

(i)  any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed receiver, including assets which the Corporation may acquire from itself as such receiver; or

(ii)  any claim relating to any act or omission of such institution or the Corporation as receiver.

The trustee argues that § 1821(d)(13)(D) does not apply in this case because FIRREA applies only to claims of a creditor of a bank in receivership and not to claims made by the bank's debtors.  *See Parker N. Am. Corp. v. Resolution Trust Corp.*, 24 F.3d 1145 (9th Cir. 1994) (bankruptcy preference action was not resolvable through FIRREA's administrative claims process because

FIRREA, by its language and legislative history, applies only to claims by creditors, not debtors)**[4]**; and *FDIC v. Cont'l Fin. Res., Inc.*, 154 B.R. 385, 388 (D. Mass. 1993) (FIRREA was intended to apply only to creditors' claims because it repeatedly refers to creditors and omits any reference to a bank's debtors).

Later circuit court cases, however, have consistently held that § 1821(d)(13)(D) applies to debtor as well as creditor claims. In *Freeman*, the D.C. Circuit found:

> Nor does the statutory text suggest that the jurisdictional bar applies only to "creditors"; on its face, it applies to *anyone* with a "claim for payment" or "action seeking a determination of rights" with respect to the failed institution's assets. *See Lloyd v. FDIC*, 22 F.3d at 337. Concededly, the notice provisions of §§ 1821(d)(3)(B) and (C) require that the FDIC give notice of the claims period to a failed financial institution's "creditors," but as we noted in *OPEIU, Local 2*, 962 F.2d at 67, "FIRREA's very text appears to contemplate claims beyond those by 'creditor[s] . . . on the . . . books' to whom statutory notice must be sent." For example, 12 U.S.C. § 1821(d)(13)(D) says that "any claim relating to an act or omission of the institution or the Corporation as receiver" is subject to the § 1821(d) exhaustion requirement.

*Freeman*, 56 F.3d at 1400-01.

The same conclusion was reached in the Eighth Circuit:

> We reject Tri-State's contention that, because the notice provisions of FIRREA apply only to creditors, § 1821(d)(13)(D)'s exhaustion requirement should be similarly limited to creditors bringing claims. While the notice provisions do apply only to creditors, such limiting language is conspicuously absent in the jurisdictional bar provision. Rather than mention creditors or limit its application to creditors, § 1821(d)(13)(D) bars "*any* claim or action for payment from, or *any* action seeking a determination of rights with respect to the failed institution's assets" (emphasis added), unless administrative remedies have been exhausted. Thus, "FIRREA's very text appears to contemplate claims beyond those by 'creditor[s] . . . on the . . . books' to whom statutory notice must be sent." *Office & Professional Employees Int'l Union, Local 2 v. FDIC*, 962 F.2d 63, 67 (D.C. Cir. 1992). We "assume Congress meant what it said when it included a jurisdictional bar to 'any action,'" *National Union,* 28 F.3d at 389, and thus we conclude that § 1821(d)(13)(D) was intended to apply to debtors as well as creditors.

*Tri-State Hotels, Inc. v. FDIC*, 79 F.3d 707, 714 (8th Cir. 1996) (footnote omitted). *See also Nat'l Union Fire Ins. Co. v. City Sav., F.S.B.*, 28 F.3d 376, 389 (3d. Cir. 1994) (term "any action" includes actions by debtors as well as creditors); *Lloyd v. FDIC*, 22 F.3d 335, 337 (1st Cir. 1994) (suit by debtor seeking equitable reformation or cancellation of mortgage agreement is a determination of rights with respect to the failed institution's assets subject to § 1821(d)(13)(D) jurisdictional bar).

---

**[4]**Under FIRREA, the FDIC acts as regulator, insurer, and receiver of banking institutions. The RTC acts as the assistor, conservator, and receiver of savings and loan institutions. *See United Liberty Life*, 985 F.2d at 1322. When acting as a receiver, the RTC enjoys the same powers and is subject to the same protections under FIRREA as the FDIC. 12 U.S.C. § 1441a(b)(4). It is appropriate, therefore, to refer to cases involving the RTC when considering the reach of § 1821 with respect to a bank under receivership of the FDIC. *See FDIC v. Rahn*, 116 F.3d 1142, 1145 (6th Cir. 1997).

Most circuits, including the Ninth Circuit, have limited the reasoning in *Parker* to the bankruptcy setting. *See McCarthy v. FDIC*, 348 F.3d 1075, 1078-79 (9th Cir. 2003). The D.C. Circuit specifically stated:

> The concern underlying these cases is clear: if bankruptcy courts are ousted of jurisdiction over a broad class of claims under the § 1821(d) jurisdictional bar, the unity of the bankruptcy process may be fractured and some bankruptcy-related claims would be determined, at least in the first instance, by FDIC administrative tribunals, which (it is argued) have little expertise in bankruptcy matters. [*Parker*, 24 F.3d at 1153.]. For the reasons stated above, we do not think this construction of the § 1832(d)(13)(D) jurisdictional bar quite squares with the statutory text. But even if § 1821(d)(13)(D) is narrowly construed as a limitation on bankruptcy courts' jurisdiction in order to effectuate the purposes of the Bankruptcy Code, [*Parker*, 24 F.3d at 1155-56], we decline to extend that approach to nonbankruptcy court contexts.

*Freeman*, 56 F.3d at 1401.

We are troubled by the argument that the language in a statute has a different meaning when it is read in the context of a bankruptcy case than it has in the context of any other case. While the notice provisions of § 1821 apply only to creditors, and there is no specific mention of a bank's debtors, § 1821(d)(13)(D) clearly applies to "any action" with respect to the failed institution's assets. The fact that the claim is associated with a bankruptcy proceeding does not suddenly render the language ambiguous. We, therefore, decline to hold that § 1821(d)(13)(D) does not apply simply because the person asserting the claim, in this case the trustee, is not a creditor of the bank.

But that does not end our inquiry, § 1821(d)(13)(D) is not a complete jurisdictional bar. It allows for exceptions. One exception recognized by courts is the judicial review allowed under § 1821(d)(6)(A) of a disallowed (or undecided) administratively filed claim. Some courts have held that § 1821(d)(13)(D) imposes a statutory exhaustion requirement; in other words, a party must first exhaust the administrative complaint process with the FDIC before a federal court can obtain jurisdiction over the party's claim. *See, e.g., Freeman*, 56 F.3d at 1394. Superior Bank relies upon these cases to argue that the bankruptcy court lacked jurisdiction because the debtor (and/or the trustee) did not submit a claim to the FDIC under FIRREA's administrative claims process.

The facts of *Freeman* and the other cases cited by Superior Bank (which were also referenced in the FDIC's response to our inquiry) are different from the facts of the case before us. In those cases, the court action was commenced *after* the failed bank was placed in receivership. By contrast, in this case both the bankruptcy proceeding and the adversary action were commenced *before* Superior Bank was placed in receivership. Thus, this was a preexisting or pre-receivership case as opposed to a post-receivership case.

Ordinarily, the subject matter jurisdiction of a court is tested as of the time the action is filed and subsequent changes will not operate to divest a court of its jurisdiction once it has been properly invoked. Congress may override this "time of filing" rule if it so chooses, but there is an even greater need for clear and affirmative congressional action when it intends to do so. *See Holmes Fin. Assocs., Inc. v. Resolution Trust Corp.*, 33 F.3d 561, 565 (6th Cir. 1994).

The bankruptcy court had jurisdiction to decide the avoidance issue at the time the adversary complaint was filed. 28 U.S.C. § 157(b)(2)(F), (K), and (O). We must determine, therefore, whether Congress clearly and affirmatively chose to divest the bankruptcy court of that jurisdiction through § 1821(d)(13)(D) of FIRREA. The first rule of statutory construction is that "[t]he starting point for interpretation of a statute is the language of the statute itself." *Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827, 835 (1990) (internal quotation marks and citation omitted). The plain meaning is conclusive "except in the rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intention of its drafters." *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 242 (1989) (internal quotation marks and citations omitted). A review of § 1821(d)(13)(D) and the other provisions of FIRREA convinces us that Congress did not intend to strip the bankruptcy court of its jurisdiction in a pre-receivership context.

The "[e]xcept as otherwise provided in this subsection" language in § 1821(d)(13)(D) applies to § 1821(d) as a whole. *Whatley v. Resolution Trust Corp.*, 32 F.3d 905, 907 n. 11 (5th Cir. 1994). Because Congress did not state "except as otherwise provided in § 1821(d)(6)(A)," there logically may be other exceptions to the jurisdictional bar of § 1821(d)(13)(D) besides the judicial review of an administratively filed claim allowed under § 1821(d)(6)(A).

Section 1821(d)(12)(A) contains another exception. Section 1821(d)(12)(A)(ii) of FIRREA provides that the receiver *may* request a stay of 90 days in any judicial proceeding to which the bank in receivership "is or becomes a party." Any court with jurisdiction of such action or proceeding shall grant such stay as to all parties. 12 U.S.C. § 1821(d)(12)(B). To interpret § 1821(d)(13)(d) as stripping a court of jurisdiction in a pre-receivership action would render § 1821(d)(12)(A) superfluous. There would be no need for a stay if a court automatically lost jurisdiction upon the appointment of a receiver. *See Whatley*, 32 F.3d at 907 (neither a request for a stay nor the failure to request a stay deprives the district court of jurisdiction); *Praxis Props., Inc. v. Colonial Sav. Bank*, 947 F.2d 49, 63 n.14 (3d. Cir. 1991) (jurisdiction not lost by subsequent insolvency of thrift and takeover by RTC).

The question then becomes what happens if, as in this case, the receiver does not request a stay. In other words, can a court proceed to judgment in a case over which it has jurisdiction if the receiver has not requested a stay? If the receiver elects not to request a stay, we find nothing in FIRREA which would restrain a court that acquired jurisdiction before the receiver was appointed from proceeding to decide the issues rightfully before it. If Congress had meant for the administrative claims process to result in an automatic, mandatory stay of a preexisting action pending the resolution of a claim through the administrative claim process, it would have been a simple matter to do so. *See Whatley*, 32 F.3d at 909. It did not do so. Instead, it provided a mechanism in § 1821(d)(12)(A) for the receiver to decide whether to stay a preexisting action or to allow that action to proceed to judgment. *See FDIC v. Lacentra Trucking, Inc.*, 157 F.3d 1292, 1303 (11th Cir. 1998) (FIRREA gives the receiver the authority to decide whether to require the claimant to exhaust administrative remedies or to allow the pre-receivership litigation to proceed to judgment); *Whatley*, 32 F.3d at 908 (if the receiver does not seek a stay, judicial action will routinely proceed.)

This conclusion is further supported by language in § 1821(d)(5)(F) and § 1821(d)(8)(E) which both state in subsection (i) that the filing of an administrative claim with the receiver has the legal effect of tolling the applicable statute of limitations for such claim. Subsection (ii) states, however, that: "Subject to paragraph (12) [subject to a stay obtained under § 1821(d)(12)(D)], the filing of a claim with the receiver shall not prejudice any right of the claimant to continue any action which was filed before the appointment of the receiver." 12 U.S.C. § 1821(d)(5)(F) and § 1821(d)(8)(E)(ii).

We are aware that some circuits have reached a contrary conclusion, but we are not persuaded by the reasoning in those decisions. The Ninth Circuit decided that a court in a pre-receivership case can lose jurisdiction if the claimant does not file a claim with the receiver under FIRREA's administrative claim process. *Intercontinental Travel Mktg., Inc. v. FDIC*, 45 F.3d 1278 (9th Cir. 1994). It saw "no reason, in § 1821(d) or any other source" why its prior decision in a post-receivership case should not apply to pre-receivership actions. *Id.* at 1282-83.

Section 1821(d)(13)(D) precludes a court from *acquiring* jurisdiction *after* the receiver is appointed. The only exception in such a post-receivership case is § 1821(d)(6)(A), which confers jurisdiction upon a federal court in the district where the bank's principal place of business is located or the D.C. Circuit to hear a claim disallowed by the receiver through the administrative claim process. But § 1821(d)(12)(A) shows that Congress intended pre-receivership cases be treated differently. Section 1821(d)(12)(A), as well as § 1821(d)(5)(F) and § 1821(d)(8)(E), recognize not only that a court retains jurisdiction in a preexisting action, but also that it may proceed to judgment in the absence of a stay.

In *Brady Dev. Co. v. Resolution Trust Corp.*, 14 F.3d 998 (4th Cir. 1994), the Fourth Circuit held that litigants who have an action pending in court against a financial institution subsequently placed in receivership must exhaust FIRREA's administrative claims process in order to continue their action in district court. The Fourth Circuit held that § 1821(d)(13)(D) must be read in conjunction with FIRREA's allowance of an action within 60 days of a claim being denied by the receiver as provided for in § 1821(d)(6)(A). It held that together these sections mandate that a court cannot hear any claim until it has been rejected by the RTC in its administrative review or until the 180-day administrative review period has expired. It concluded that Congress envisioned that administrative and judicial review of claims could not take place simultaneously. The court found that permitting a pre-receivership action to proceed where the claimant had not filed an administrative claim with the RTC "would thwart FIRREA's purposes and permit creditors to evade the comprehensive administrative claims procedures envisioned by the statute." *Id.* at 1006.

A similar result was reached in *Bueford v. Resolution Trust Corp.*, 991 F.2d 481, 485 (8th Cir. 1993), where the Eighth Circuit examined § 1821(d)(6)(B), which provides that a claim is "deemed to be disallowed . . . such disallowance shall be final, and the claimant shall have no further rights or remedies with respect to such claim" if, after a claim has been disallowed by the receiver, the claimant does not request administrative review, file suit, or continue an action already commenced before the appointment of a receiver. 12 U.S.C. § 1821(d)(6)(B). Because this section specifically mentions actions commenced prior to the appointment of the receiver, the Eighth Circuit concluded that the requirement for administrative exhaustion applies equally to pre-receivership cases.[5] *Bueford*, 991 F.2d at 485. *See also Resolution Trust Corp. v. Mustang Partners*, 946 F.2d 103, 106 (10th Cir. 1991) (no interpretation is possible which would excuse the requirement for filing an administrative claim, or allow the filing of suit to substitute for the claim process).

Again, we disagree with this reasoning. Section 1821(d)(6) by its terms applies only to claims which have been submitted for determination by the receiver pursuant to § 1821(d)(5). It allows for agency review or judicial determination of a claim which was disallowed by the receiver or which was not decided within 180 days after it was submitted to the receiver for decision. 12 U.S.C. § 1821(d)(6)(A). It also provides that if such review is not sought, the claim, which was initially submitted to the receiver for decision, is deemed disallowed and "such disallowance shall be final, and the claimant shall have no further rights or remedies with respect to such claim." 12 U.S.C. § 1821(d)(6)(B). Section 1821(d)(6), however, does not itself mandate the filing of a

---

[5]The court relied on both § 1821(d)(13)(D) and 1821(d)(6)(B) to find that FIRREA requires administrative exhaustion before any court acquires subject mater jurisdiction. *Bueford*, 991 F.2d at 484 n. 4.

claim with the receiver.[6] The only section which can be construed as mandating administrative processing of a claim is § 1821(d)(13)(D). As we discussed above, § 1821(d)(13)(D) provides for exceptions. One of those is contained in § 1821(d)(12)(A), which explicitly recognizes the continued jurisdiction of a court in a pre-receivership case. In light of this explicit recognition of the jurisdiction of a court in a pre-receivership case, and in the absence of any language in FIRREA clearly and affirmatively stripping such courts of their jurisdiction, we conclude that the bankruptcy court retained jurisdiction to decide the avoidance issue in this case.

Our conclusion is particularly compelling under the facts of this case. In *Lacentra Trucking*, 157 F.3d at 1304, the Eleventh Circuit reached the same result in a case with a very similar history:

> RTC permitted the pre-receivership litigation to proceed and participated freely in it, dealing with claimant's counsel as litigant. Not only did the receiver not make known a choice to use administrative processes but for months it pursued a course of action consistent only with litigation. It defined the issues for litigation. It utilized the litigation to obtain information on the issues for the determination of which the case had been remanded. The parties were exposed to months of litigation and expense. The resources of the district court were needlessly dissipated. Disposition of RTC's assets received from the foreclosed property was delayed. Then, on the eve of trial, RTC invoked the administrative processes it had heretofore eschewed as a vehicle to dispose of the case favorably to its position without trial or hearing. This the receiver could not do. This case is the antithesis of the orderly and prompt procedures contemplated by the statute. It stands the statute on its head. The choice given RTC to choose between litigation and administrative process means little if the receiver does not make known what its choice is so that the case, or the administrative process, can proceed accordingly.

The facts of the case before us are even more egregious. The FDIC did not intervene and did not request a stay of this pre-receivership case after it was appointed receiver of Superior Bank.[7] Instead, it elected to allow Superior Bank to proceed to litigate this case through final judgment. It was only after losing in the bankruptcy court, losing in an appeal to the district court, and then perfecting an appeal in this Court, that Superior Bank attempted to invoke the provisions of FIRREA. We, therefore, find that the bankruptcy court retained jurisdiction to reach final judgment in this adversary action.

## B. Preferential Transfer

The grant of summary judgment presents a pure question of law. The district court reviews the bankruptcy court's grant of summary judgment *de novo*, as do we in turn. *Stevenson v. J.C. Bradford & Co.*, 277 F.3d 838, 849 (6th Cir. 2002). Federal Rule of Civil Procedure 56(c) governs motions for summary judgment in adversary proceedings in bankruptcy court. FED. R. BANKR. P. 7056. Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any

---

[6] Nor does § 1821(d)(5) mandate the filing of a claim with the receiver. The Fourth Circuit stated that the failure to file a claim by the date specified in the notice renders the claim permanently disallowed. *Brady*, 14 F.3d at 1003. Section 1821(d)(5)(C)(I), however, provides for disallowance of claims actually filed with the receiver after the end of the filing period. It does not address claims that are never filed with the receiver.

[7] We also note that FIRREA gives the receiver the discretion or option to decide claims through the administrative process: "The Corporation *may*, as receiver, determine claims in accordance with the requirements of this subsection. . . ." 12 U.S.C. § 1821(d)(3)(A) (emphasis added). There is no evidence in this record as to whether the FDIC elected to determine claims against the assets of Superior Bank through the administrative claims process or that it gave any of the notices required under FIRREA.

material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). When reviewing a motion for summary judgment, the evidence, all facts, and any inferences that may be drawn from the facts must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Under 11 U.S.C. § 547(b)(4)(A), a trustee may avoid a transfer of the debtor's interest in property made on or within 90 days before the date of the filing of the petition. The recording of a mortgage constitutes a transfer of an interest in the subject property for purposes of § 547. Superior Bank's mortgage was recorded within 90 days before the debtor filed her petition. Superior Bank argued, however, that its mortgage should be equitably subrogated to Empire National Bank's mortgage, which was recorded well before the 90-day period.[8]

The Michigan Supreme Court has held that "[e]quitable subrogation is a legal fiction through which a person who pays a debt for which another is primarily responsible is substituted or subrogated to all the rights and remedies of the other." *Commercial Union Ins. Co. v. Med. Protective Co.*, 393 N.W.2d 479, 482 (Mich. 1986), citing *Smith v. Sprague*, 222 N.W. 207, 208 (Mich. 1928), and *Foremost Life Ins. Co. v. Waters*, 278 N.W.2d 688, 689 (Mich. App. 1979), *rev'd on other grounds*, 329 N.W.2d 688 (Mich. 1982). Pursuant to this doctrine, the subrogee acquires no greater rights than those possessed by the subrogor, and the subrogee may not be a "mere volunteer." *Hartford Accident & Indem. Co. v. Used Car Factory, Inc.*, 600 N.W.2d 630, 632 (Mich. 1999); *Lentz v. Stoflet*, 273 N.W. 763, 765 (Mich. 1937). To avoid being a mere volunteer, the party seeking subrogation must have made payment in order to fulfill a legal or equitable duty owed to the subrogor. *Beaty v. Hertzberg & Golden*, 571 N.W.2d 716 (Mich. 1997).

Under Michigan law, it appears that Superior Bank was a volunteer because it had no legal or equitable duty to repay the Empire National Bank loan. Even if Superior Bank was not a mere volunteer, however, the equities do not justify the application of equitable subrogation in this case.

"Equitable subrogation is a flexible, elastic doctrine of equity" and "[i]ts application should and must proceed on the case-by-case analysis characteristic of equity jurisprudence." *Hartford*, 600 N.W.2d at 632-33. Subrogration is granted, if at all, with due regard to the rights of others; and it will be refused where it is inequitable to grant it. *Walker v. Bates*, 222 N.W. 209 (Mich. 1928). Evidence of the lapse of time must be considered with the facts and circumstances of the case to determine whether equitable subrogation should be enforced. *Smith*, 222 N.W. at 208. In this case, Superior Bank is a sophisticated creditor who had complete control over the recording of the signed mortgage. It offers no explanation for the more than seven-month delay between the signing and the recording of the mortgage. Its own negligence led to the dilemma created by the debtor's filing for bankruptcy. *See Walker*, 222 N.W. at 210. Under these facts, Superior Bank is not entitled to have its interest equitably subrogated to those of Empire National Bank to escape the avoidance of its mortgage for the benefit of the rest of the debtor's creditors. *See Cowan v. Huntington Nat'l*

---

[8]Superior Bank raised two additional arguments in its brief that merit little attention. First, it argued that § 547 does not apply because the debtor had no recorded interest in the property when the bankruptcy petition was filed. There was no reference to evidence in the record, but we shall assume that the quitclaim deed from Bigger and DePeel to the debtor, Bigger, and DePeel was not recorded on the date of the petition. Under Michigan law, a deed conveying real property is effective upon delivery, not recording. *Resh v. Fox*, 112 N.W.2d 486, 488 (Mich. 1961). Superior Bank's argument fails, therefore, because the deed was delivered prior to the filing of the bankruptcy petition. In addition, Superior Bank argued that because the trustee had actual knowledge of Superior Bank's and Empire National Bank's mortgages when the petition was filed, the trustee cannot avoid the mortgage under 11 U.S.C. § 544 (a). Section 544 permits a trustee to defeat claims to real property that are voidable under applicable state law. Superior Bank's mortgage was avoided pursuant to § 547, however, where the trustee's knowledge at the commencement of the case is irrelevant.

*Bank*, 273 B.R. 98, 107 (B.A.P. 6th Cir. 2002) (applying Ohio law). The grant of summary judgment to the trustee avoiding Superior Bank's mortgage, therefore, is **AFFIRMED**.[9]

---

[9]After the briefs were filed in this case on appeal, Superior Bank filed a letter of citation of supplemental authorities pursuant to Fed. R. App. P. 28(j). It asserted for the first time the earmarking doctrine as a defense to the trustee's avoidance powers under § 547(b). We will not consider this argument because Superior Bank did not make it in its brief, and "'a letter submitted pursuant to [R]ule 28(j) *cannot* raise a new issue.'" *United States v. Nason*, 9 F.3d 155, 163 (1st Cir. 1993) (*quoting United States v. LaPierre*, 998 F.2d 1460, 1466 n.5 (9th Cir. 1993), *amended* (9th Cir. 1993)). *See also Valdez v. Mercy Hosp.*, 961 F.2d 1401, 1404 (8th Cir. 1992).

---

**CONCURRENCE**

---

JAMES G. CARR, Chief District Judge, concurring.  I agree with the majority's opinion and believe that, insofar as the opinion discusses the jurisdictional issues, the majority's decision is clear and concise.  I write separately only to clarify my understanding of two of the remaining issues: 1) the relationship between preferential transfer law and Michigan's equitable subrogation law; and 2) whether recordation of the deed is a necessary prerequisite to deed validity.

**A. Preferential Transfer and Equitable Subrogation**

The bankruptcy code allows a trustee in bankruptcy to avoid any transfer that is made ninety days prior to the date of the filing of the bankruptcy petition as being a preferential transfer.  11 U.S.C. § 547(b)(4)(A).  Section 547(e)(2)(A) defines a transfer in real property as taking place when the transfer took place so long as the transfer is perfected within ten days.  Otherwise, a transfer in real property is deemed to have taken place "*at the time* [*the*] *transfer is perfected*," if the perfection occurred outside of the ten day window.  11 U.S.C. § 547(e)(2)(B) (emphasis added).

It is undisputed that Superior Bank did not perfect its security interest in the property until the recordation fell within the ninety-day period prior to the bankruptcy.  Under the Bankruptcy Code, the transfer of the interest in property to Superior Bank was deemed to have occurred at the time of the perfection. Under the plain and unambiguous meaning of the bankruptcy code, the trustee in bankruptcy is allowed to avoid this transfer. However, Superior Bank argued that they should be equitably subrogated to Empire National Bank's mortgage, which was recorded prior to the start of the preferential transfer period. If Superior Bank's contention was correct, the trustee in bankruptcy's effort to avoid Superior Bank's interest would be thwarted.

"Equitable subrogation is a legal fiction through which a person who pays a debt for which another is primarily responsible is substituted or subrogated to all the rights and remedies of the other."  *Hartford Accident & Indem. Co. v. The Used Car Factory, Inc.*, 600 N.W.2d 630, 632 (Mich. 1999).  Further, the subrogee must have some obligation to pay the debt of another and not be a "mere volunteer." *Id.*; *see also Lentz v. Stoflet*, 273 N.W. 763, 764 (Mich. 1937).

Most cases involving equitable subrogation involve some sort of contractual or insurance responsibility/relationship by one party to pay a third party. *See In re Glade Springs, Inc.*, 826 F.2d 440 (6th Cir. 1987) (applying Michigan law, holding a confirming bank contractually obligated to pay on a letter of credit could equitably subrogate to the rights of the party that should have been paid on the letter against the issuing bank); *Commercial Union Ins. Co. v. Med. Protective Co.*, 393 N.W.2d 479 (Mich. 1986) (excess insurer may be equitably subrogated to insured party — and be allowed to sue a primary insurer — when it pays a claim on behalf of an insured party that the primary insurer declined to pay; because the excess insurer was contractually bound to pay the debt of the insured party, they were a party for whom equitable subrogation was appropriate); *Allstate Ins. Co. v. Snarski*, 435 N.W.2d 408 (Mich. App. 1988) (in an automobile accident, the insurance company that paid a claim to its own insured when the driver at fault's insurance company should have paid was properly equitably subrogated to their insured's claim against the at-fault driver). *But see Robinson Trust, v. Ardmore Acres, Inc.*, 6 F. Supp. 2d 640 (E.D. Mich. 1998) (a good faith

purchaser for value and without notice of an existing tax lien can subrogate to a senior lienholder and claim a priority over the federal tax lien).[1]

The Supreme Court of Michigan applies a three part test to determine if a party is one which should be allowed to exercise equitable subrogation rights. *See Hartford Accident*, 600 N.W.2d at 633. The test is:

> (1) a special relationship must exist between the client and the third party in which the potential for conflicts of interest is eliminated. . .,
> (2) the third party must lack any other available legal remedy, and
> (3) the third party must not be a "mere volunteer," i.e., the damage must have been incurred as a consequence of the third party's fulfillment of a legal or equitable duty the third party owed to the client.

*Id.* The first part of this test is not in dispute. However, Superior Bank does not prevail on parts two and three.

As to part two of the test, Superior Bank had another legal remedy: if Superior Bank had perfected its security interest in time, or at least one day before the ninety-day preference period had begun, it would never have been in a situation where its security interest was avoidable. Superior Bank's legal remedy was timely recordation. We now should not allow Superior Bank to claim a right of equitable subrogation when it had an available — and easy to accomplish — legal remedy to protect itself.

As to part three of the test, Superior argued that, because it refinanced the debtor's prior loan, in essence paying a debt for which another is primarily responsible, it was not a "mere volunteer," but rather the type of party that the Michigan equitable subrogation doctrine envisions. This is simply incorrect. Although Superior Bank eventually was bound to pay the loan to Empire, Superior Bank entered into this contract for its own pecuniary gain, thereby "volunteering" to pay the debt. Superior Bank was not an insurance company or surety, but rather a mortgage refinancer. Superior Bank did not pay Empire because a contractual provision between Empire and Superior Bank so required, but rather because it was part of the refinancing deal between itself and the debtor.

Even if Superior Bank was correct that equitable subrogation law says that, because it was contractually bound to pay the debtor's debt, it is a party that is properly equitably subrogated, Superior Bank would be subrogated to the rights of the *debtor*, and not to Empire.[2] Superior Bank cannot subrogate to Empire's security interest. Superior Bank was not contractually obligated by Empire to pay Empire. Superior Bank was contractually obligated by the debtor to pay Empire. The only party to whom FSB could possibly subrogate itself to is the debtor.

---

[1] The facts of *Robinson* are not applicable here. Superior Bank was not a good faith purchaser for value and without notice who then sought to be subrogated to a security interest to avoid being subject to an intermediate lien. Superior Bank sought to be subrogated to a bank lien that was no longer in effect, not to avoid an intermediate lien that Superior did not know about when retaining a security interest in the debtor's property. Rather, Superior Bank seeks to avoid having its failure to timely record said security interest not be avoided by the trustee in bankruptcy.

[2] For example: *A* is a debtor of *B*. *I*, a surety or insurance company, is contractually obligated by *B* to pay *B* if *A* defaults on *A*'s obligation. If *A* defaults and *I* pays *B*, *I* can subrogate to *B*'s rights against *A*. However, in the case before us, Superior Bank is on *A*'s side of the equation — Superior Bank was not contractually obligated by *B* to pay *B*, but rather by *A* to pay *B*. Therefore, under the equitable subrogation doctrine, Superior Bank can only be subrogated to the rights of the debtor — *A* — and not to Empire National Bank — *B*.

For the aforementioned reasons, I concur with the majority opinion. Superior Bank should not be equitably subrogated to Empire's rights and, therefore, its security interest was properly avoided.

## B. Recordation of the Deed

Superior Bank argued that it was hypocritical for the trustee in bankruptcy to seek to avoid Superior Bank's interest in the property when the debtor's interest was never recorded. Superior Bank's argument was that, because the trustee in bankruptcy did not know about the debtor's interest initially (because it was unrecorded), and because the trustee could or should have known about Superior Bank's interest, the trustee should not be able to avoid Superior Bank's recorded interest when the debtor's interest was not recorded. Superior Bank's argument, therefore, was that the debtor's interest should not be considered because it was unrecorded. The law does not bear this contention out.

The majority opinion cites *Resh v. Fox*, 112 N.W.2d 486, 488 (Mich. 1961) for the proposition that a deed only needs to be delivered to be valid; recordation is not necessary for a deed to be valid. I believe that the answer may additionally be found in the clear language of Michigan's recordation statute.

Under this statute:

> Every conveyance of real estate within the state hereafter made, *which shall not be recorded*. . . shall be void as against any subsequent purchaser in good faith and for a valuable consideration, of the same real estate or any portion thereof, whose conveyance shall be first duly recorded. The fact that such first recorded conveyance is in the form or contains the terms of a deed of quit-claim and release shall not affect the question of good faith of such subsequent purchaser, or be of itself notice to him of any unrecorded conveyance of the same real estate or any part thereof.

M.C.L. § 565.29 (emphasis added). This statute does not require a conveyance to be recorded to be a valid conveyance. It only requires a conveyance to be recorded if the conveyee wants to have his or her interest in the real property valid against a subsequent good faith purchaser. *Id*.

Under § 565.29, even though the debtor's interest in the property was never recorded in the real property records, it is uncontroverted that she received a quitclaim deed to the property. Therefore, the debtor had a valid interest in the property and such property was properly considered by the trustee in bankruptcy.

For these reasons, I concur with the majority's decision that the debtor's interest in the property was properly considered by the trustee in bankruptcy.